Walter **ROBINSON**, Jr., Appellant,

v.

Jesse **BROWN**, Secretary of Veterans Affairs, Appellee.

No. 95–39.

United States Court of Veterans Appeals.

Sept. 13, 1996.

Stephen T. Gionfriddo, Middletown, CT, was on the brief, for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Michael P. Butler, Washington, DC, were on the brief, for appellee.

Before HOLDAWAY, IVERS, and STEINBERG, Judges.

IVERS, Judge:

The appellant appeals a November 9, 1994, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for a psychiatric disorder. *Walter Robinson, Jr.,* BVA 94–19546 (Nov. 9, 1994). In his brief, the appellant does not argue that the BVA's factual findings were incorrect; rather, he argues that the 90–day duty requirement for a presumption of service connection, under 38 U.S.C. § 1112(a) and 38 C.F.R. § 3.307(a)(1995), is arbitrary, capricious, and discriminatory. Appellant's Brief (Br.) at 5. In the absence of any argument presented to contest the BVA findings of fact or law, the Court considers the appellant's service connection claim as abandoned. *See Degmetich v. Brown,* 8 Vet.App. 208, 209 (1995); *Bucklinger v. Brown,* 5 Vet.App. 435, 436 (1993). Accordingly, the Court will address only the 90–day duty requirement. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will affirm the Board's November 1994 decision.

## I.

The appellant served on active duty in the United States Air Force for slightly more than 60 days, from February 1, 1977, until April 5, 1977. Record (R.) at 39. Both the appellant's preinduction and separation physical examinations were negative for any psychiatric problems. R. at 15–30. During his separation examination, the appellant specifically denied "[f]requent trouble sleeping," "[d]epression or excessive worry," "[l]oss of memory or amnesia," and "[n]ervous trouble of any sort." R. at 24.

In February 1991, the appellant filed a Veteran's Application for Compensation or Pension, seeking compensation for a "psychiatric disorder." R. at 32–35. In the application, he stated that he had received treatment for psychiatric illness while in the Air Force during March 1977 and also had been treated at the Connecticut Valley Hospital from 1978 to 1991. R. at 33–34.

In reviewing the claim, VA obtained medical records from the Connecticut Valley Hospital showing that the appellant had been hospitalized on fifteen occasions between February 1978 and March 1990 for antisocial personality and psychotic and schizophrenic disorders. R. at 41–126. VA, however, found no medical records confirming psychiatric illness while in service. In April 1991, the VA regional office (RO) denied the appellant's claim for service connection for a psychiatric condition, stating: "There is no evidence of a psychiatric condition in service. The veteran did not have the requisite length of service for presumptive service connection." R. at 127.

The appellant filed a Notice of Disagreement (NOD) on October 4, 1991. R. at 131. After submitting a VA Form 1–9, Appeal to Board of Veterans' Appeals (R. at 159), VA afforded the appellant a hearing in which he gave testimony about hearing voices and having hallucinations while he was still in service. R. at 172–77. After considering the appellant's sworn testimony and all pertinent medical records, the hearing officer issued a decision on July 13, 1992, again denying the appellant service connection for a psychiatric condition. R. at 183–84.

Following that decision, the appellant submitted medical notes from a psychiatric examination in September 1993, in which he reported to the physician that he had heard voices during basic training. R. at 208. In the medical notes, the physician advised that the appellant "should continue with his attempt to establish a service connected disability." *Ibid.* Along with the examination report, the appellant also submitted a state-

ment by another physician confirming that the appellant had been hospitalized at another institution in June 1993. R. at 209.

On December 15, 1993, the BVA remanded the appellant's claim, ordering the RO to obtain medical records from Pratt and Whitney Aircraft (the appellant's former employer). The RO was also directed to contact the National Personnel Records Center to search for any other service records that might confirm the appellant's claim that he had psychiatric problems while in, or immediately following, service. R. at 212–15.

On remand, the Pratt and Whitney medical records were obtained. R. at 232–52. Employee medical records from November 1975 and July 1976 showed that the appellant had denied having "any condition or disorder due to a previous job" and also specifically denied having any "other disorder of the nervous system." R. at 232, 234. A pre-placement examination, conducted by Pratt and Whitney in 1975, was negative for any "neuropsychiatric problems." R. at 236, 238. The only remarkable reference is a later entry in March 1978 which notes, "Empl[oyee] has been out because of nervous breakdown." R. at 259.

Other records from the period following the appellant's release from service were obtained by VA. These records show treatment for various illnesses and injuries, but not for psychiatric problems. R. at 254–63. No other service medical records were located that could verify the appellant's contention that he heard voices and had hallucinations while in service. After a review of all the newly acquired evidence, the RO in May 1994 once again denied service connection. R. at 268.

In the November 1994 BVA decision that is the subject of this appeal, the Board found no evidence to support a conclusion that the appellant had a psychiatric disability while in service. R. at 8–9. Furthermore, the Board found that since the appellant did not serve on active duty for more than 90 days, he was not entitled to a presumption of service connection under 38 U.S.C. §§ 1112(a), 1137, and 38 C.F.R. §§ 3.307, 3.309. The appellant appealed the decision to this Court.

## II.

### A.

Under 38 U.S.C. § 1112(a) and 38 C.F.R. § 3.307(a), a veteran's chronic condition may be "considered," that is presumed, "to have been incurred in" or aggravated by service, even though there is no record of any such disease during service. This presumption of service connection can apply to a diagnosis for psychosis, but only if the disease becomes "manifest to a degree of 10 percent or more within 1 year . . . from the date of separation from service" and the appellant has served "90 days or more during a war period or after December 31, 1946." 38 C.F.R. § 3.307(a)(3), (1); see also 38 C.F.R. § 3.309 (1995). Although the appellant meets the first criterion, he clearly fails to meet the second. See R. at 39. The appellant, in his brief and without resort to case citations or reference to other legal authority, claims that the 90–day duty requirement is arbitrary, capricious, and discriminatory. Appellant's Br. at 5.

The appellant seeks interpretation of the statutory and regulatory provisions regarding the 90–day duty requirement. By alleging that the 90–day duty requirement is "discriminatory," the appellant appears to raise a claim as to the constitutionality of that requirement. In the case of a final decision by the BVA, see 38 U.S.C. § 7252(a), the Court has the authority to hear such claims under 38 U.S.C. § 7261(a). Under this statute, the Court may:

(1) decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary;

(2) compel action of the Secretary unlawfully withheld or unreasonably delayed; [and]

(3) hold unlawful and set aside decisions, findings, . . . conclusions, rules, and regulations issued or adopted by the Secretary, the Board of Veterans' Appeals, or the Chairman of the Board . . . .

38 U.S.C. § 7261(a)(1)–(3). The Court has held that it is empowered to make determi-

nations regarding the interpretation and application of regulations and constitutional claims. *See Giancaterino v. Brown,* 7 Vet. App. 555, 557 (1995); *Buzinski v. Brown,* 6 Vet.App. 360, 364–65 (1994).

### B.

From its very origins, VA has required a minimum of 90 days' service before service connection could be presumed. The initial Act of March 20, 1933, specifically authorized the President to:

> prescribe by regulation the required number of days of war or peace time service for each class of veterans, ... the nature and extent of proofs and presumptions for such different classes, and any other requirements as to entitlement as he shall deem equitable and just.

Act of March 20, 1933, Title I, § 4, Pub.L. No. 1, 73d Cong., 1st Sess., 48 Stat. 8 (1933). Pursuant to that direction, eleven days later, on March 31, 1933, the President issued Executive Order 6089, Veterans' Regulation No. 1(a), which, inter alia, presumed service connection for "a chronic disease becoming manifest to a degree of 10 percent or more within one year from the date of separation from active service ...: *Provided,* The person suffering from such disease served 90 days or more in the active service...." Veterans' Regulation No. 1(a), Part I(c). On April 15, 1933, the Administrator of Veterans' Affairs issued Instruction No. 6 to Veterans' Regulation No. 1(a), which provided, in pertinent part, that "[s]ervice for 90 days or more, required by Part I, paragraph I(b) and (c) ... will be taken to mean continuous, active service...." *See* Administrator's Decision, Veterans' Administration, No. 247, May 12, 1934. This instruction, which presently appears at 38 C.F.R. § 3.307(a)(1), has remained in effect since April 15, 1933. *See, e.g.,* S.Rep. No. 80–1536, 80th Cong., 2d Sess. (1948), *reprinted in* 1948 U.S.C.C.A.N. 2116.

■ Although the appellant appears to claim denial of equal protection by alleging that the 90–day requirement is "discriminatory," such a claim must be addressed as one for denial of due process under the Fifth Amendment. In 1954, the United States Supreme Court wrote: "[While] [t]he Fifth Amendment ... does not [specifically] contain an equal protection clause as does the Fourteenth Amendment which applies only to the states[,] ... discrimination may be so unjustifiable as to be violative of due process." *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). In determining whether there has been a violation of due process, the Supreme Court applies the same standard to the federal government that it applies to the states under the Equal Protection Clause of the Fourteenth Amendment. *See, e.g. Schlesinger v. Ballard,* 419 U.S. 498, 500 n. 3, 95 S.Ct. 572, 574 n. 3, 42 L.Ed.2d 610 (1975); *see also Latham v. Brown,* 4 Vet.App. 265, 266 (1993). "Under this standard, unless a classification is suspect, such as where it is predicated on race or alienage, or where it involves a fundamental right, such as voting, it need meet only the rational basis test. *See Nordlinger v. Hahn,* 505 U.S. 1, 8–12, 112 S.Ct. 2326, 2331–32, 120 L.Ed.2d 1 (1992)." *Latham,* 4 Vet.App. at 266–67. "Social and economic legislation ... that does not employ suspect classifications or impinge on fundamental rights ... carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981). "A statutory determination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

■ Therefore, in order for the appellant to demonstrate a constitutional violation in this case, he must show that the 90–day duty requirement does not bear any rational relationship to a legitimate government interest. *See Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981). The appellant has not made such a showing.

As the Secretary aptly contends:
> Congress established a 90–day duty requirement to ensure that an individual had enough contact with the military, a sufficient nexus, to make it reasonably likely that the undetected disease had its onset during service, to the exclusion of civilian

life either before or after active service. . . . This bright line set by Congress is a rational exercise of authority, which furthers the fundamental tenet that disability compensation will be paid only for disease or injury incurred [or aggravated] in service. Understandably, appellant would have preferred Congress to have selected an even shorter period of service, i.e., 60 days, but it cannot be said that the 90–day period is irrational.

Secretary's Br. at 12–13.

The Court notes that the brief submitted by the appellant's counsel lacked any developed or well-supported argument against the 90–day requirement. In counsel's brief, he argues mainly that "the regulation could just as easily be read to state that if a veteran serves 60 days or more, the presumption is in the [veteran's] favor." Appellant's Br. at 5. A conclusory statement such as this certainly does not show why the 90–day requirement is irrational.

### III.

Accordingly, upon consideration of the record and the parties' pleadings, the Court AFFIRMS the November 9, 1994, BVA decision.