**Thurgood WRIGHT, Appellant,**

v.

**Hershel W. GOBER, Acting Secretary of Veterans Affairs, Appellee.**

**No. 95–135.**

United States Court of Veterans Appeals.

Argued Jan. 27, 1997.

Decided July 22, 1997.

Michael W. Willis, Whiteville, NC, for appellant.

David W. Engel, Deputy Assistant General Counsel, with whom Mary Lou Keener, General Counsel; and Ron Garvin, Assistant General Counsel, were on the brief, Washington, DC, for appellee.

Before KRAMER, HOLDAWAY, and STEINBERG, Judges.

HOLDAWAY, Judge, filed the opinion of the Court. KRAMER, Judge, filed a dissenting opinion.

HOLDAWAY, Judge:

The appellant, Thurgood Wright, appeals an October 31, 1994, decision of the Board of Veterans' Appeals (BVA or Board) that denied him entitlement to an effective date

earlier than November 15, 1990, for service connection and a 10% disability rating for chronic epididymitis and chronic orchialgia. The appellant has not challenged the BVA's denial of an effective date prior to February 17, 1994, for a 30% disability rating for those same conditions. The Court considers the appellant to have abandoned that issue on appeal, and the Court will not review it. *See Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993). In his initial brief, the appellant appeals the BVA's decision to deny him an earlier effective date for his 10% disability rating on the basis that the provisions of 38 U.S.C. § 5110(a) and (b)(1) violate the equal protection component of the Fifth Amendment Due Process Clause. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the following reasons, the Court will affirm the decision of the Board.

## I. FACTS

The appellant served on active duty in the United States Army from August 1954 to October 1954. During service he injured himself while lifting boxes and was diagnosed with epididymitis. Epididymitis is "an inflammation of the epididymis," which is "the elongated cordlike structure along the posterior border of the testis." DORLAND'S ILLUS-TRATED MEDICAL DICTIONARY 566 (28th ed.1988) [hereinafter DORLAND'S]. Before he completed basic training, he was discharged for poor eyesight. In October 1954, the appellant filed a claim with a Veterans' Administration (now Department of Veterans Affairs) regional office (VARO) for, inter alia, a "[s]wollen lower stomach." The VARO denied his claim in November 1954. In April 1955, the BVA denied his claim for residuals of epididymitis.

On November 15, 1990, the appellant filed an application seeking service connection for, inter alia, a prostate condition. He was diagnosed with a right-side inguinal hernia in December 1990. In March 1992, the VARO interpreted the appellant's application as one to reopen his claim for epididymitis and granted him service connection, with a 10% disability rating, effective November 15, 1990, the day he filed his claim to reopen.

The appellant timely appealed the VARO's decision to the Board. At a December 1992 hearing before the BVA, the appellant, through his attorney, argued that the appellant's effective date should relate back to 1954 when his original application was filed, that the VARO in 1955 committed clear and unmistakable error, and that the effective date provisions found at 38 U.S.C. § 5110(a) and (b)(1) violate the equal protection component of the Fifth Amendment Due Process Clause. In March 1993, the BVA remanded the appellant's claim to the VARO for further evidentiary development and readjudication. In May 1994, the VARO increased the appellant's disability rating to 30% for chronic epididymitis and chronic orchialgia, effective February 17, 1994, but denied, inter alia, the appellant's claim for an earlier effective date prior to November 15, 1990, for the 10% disability rating. Orchialgia is "pain in a testis." DORLAND'S at 1188.

On October 31, 1994, the BVA denied, inter alia, the appellant's claim for an earlier effective date for service connection for the 10% disability rating for chronic right epididymitis and chronic orchialgia. The BVA did not discuss the appellant's previously raised constitutional claims.

In the appellant's brief to this Court, he expressly stated that he was appealing the BVA's decision that he was not entitled to an effective date prior to November 15, 1990, "solely" on the basis that the provisions of 38 U.S.C. § 5110(a) and (b)(1) violate the equal protection component of the Fifth Amendment Due Process Clause.

On April 24, 1996, the Court, by single-judge order, directed the parties to file supplemental memoranda addressing whether the constitutional issue was before the Board in October 1994, and, assuming it was, whether the Court should remand the constitutional issue to the Board. In the parties' supplemental memoranda, both parties agreed that the constitutional issue was properly before the Board, that remand to the BVA was not necessary, and that this Court should decide the constitutional issue in the first instance.

On June 18, 1996, the Court, by single-judge order, directed the parties to file sup-

plemental memoranda discussing, inter alia, the following question raised by the Court sua sponte:

(1) Does 38 U.S.C. § 5110(b)(1) presently apply to this appellant because he filed his original claim within the time stated in such subsection, and the language "and such award is based upon such application" does not immediately follow the word "release" in such subsection, and 38 U.S.C. § 5110(a) states "[u]nless specifically provided otherwise"[?]

The June 18, 1996, order was probing the question of whether the appellant's constitutional concerns could be resolved on nonconstitutional grounds, i.e., an expansive application of section 5110(b)(1). ("It is '[a] fundamental and long-standing principle of judicial restraint ... that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" *Bucklinger,* 5 Vet.App. at 441 (quoting *Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 1323, 99 L.Ed.2d 534 (1988))). The appellant, in response, argues that "a veteran can file an original claim within a year of discharge or release but be denied an award, then refile after said one year and receive an award effective the day after the date of discharge or release." The Secretary, on the other hand, argues that section 5110(b)(1) applies only to awards of disability compensation granted in connection with a claim filed within one year after discharge.

## II. ANALYSIS

A. Plain Meaning of 38 U.S.C. § 5110(b)(1)

This case involves the interpretation of 38 U.S.C. § 5110(a) and (b)(1), which provide as follows:

(a) Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency or indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application.

(b)(1) The effective date of *an award of disability compensation* to a veteran shall be the day following the date of the veteran's discharge of release if *application therefor* is received within one year from such date of discharge or release.

(Emphasis added.) "The starting point in interpreting a statute is its language, for 'if the intent of Congress is clear, that is the end of the matter.'" *Lewis v. Brown,* 8 Vet.App. 287, 290 (1995) (quoting *Gardner v. Brown,* 5 F.3d 1456, 1458 (Fed.Cir.1993), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994)). "Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." *Gardner v. Derwinski,* 1 Vet.App. 584, 586 (1991) (citing *Bethesda Hospital Ass'n. v. Bowen,* 485 U.S. 399, 403–05, 108 S.Ct. 1255, 1258–59, 99 L.Ed.2d 460 (1988), *aff'd* 5 F.3d 1456 (Fed. Cir.1993), *aff'd* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994)).

Our review of the specific language in subsection (b)(1) and its context in the statute reveals that a veteran must file within one year after separation an application that results in an award of disability compensation in order to obtain retroactive disability compensation back to the date of separation. The key to understanding subsection (b)(1) is the contextual meaning of the phrases "an award of disability compensation" and "application therefor."

Section 5110 sets out the standards for determining the effective dates for various awards of VA benefits. The provisions of section 5110 apply only after the awarding of benefits, and the language of section 5110 presupposes such an award. Therefore, the phrase "an award of disability compensation" must refer to the actual award that is being assigned an effective date under section 5110(b)(1).

Under subsection (b)(1), the phrase "application therefor" means the application which resulted in the award of disability compensation that is to be assigned an effective date under section 5110. *Webster's New World Dictionary* defines the word "therefor" to mean "for this, for that, for it." WEBSTER'S NEW WORLD DICTIONARY 1388 (3d College

ed.1988). The words "this," "that," and "it" mean the thing previously mentioned, understood, or under discussion. *See id.* at 718, 1385, 1392 (3d College ed.1988). The thing previously stated or under discussion, and from which "therefor" would derive its meaning, is "an award of disability compensation." In accordance with the contextual meaning of "an award of disability compensation," the phrase "application therefor" means the application that resulted in the award of disability compensation currently under review for an effective date.

The appellant argues that it is possible that the phrase "if application therefor is received within one year from such date of discharge or release" could mean that the filing of an application for a particular disability within one year after separation from service preserves the date-of-separation effective date even when service connection is denied under that application and then granted on the basis of a much later application to reopen for that same disability. At most, this argument is based on a highly speculative suggestion that there is ambiguity in the language of section 5110(b)(1). But the suggestion of ambiguity is belied by the plain meaning of the statute. Nothing in the statute indicates that an effective date can be set based upon an application that resulted in a final disallowance of the claim. Also, nothing in the limited legislative history of section 5110(b)(1) suggests such an intent on the part of Congress, and this Court will not impute such an intent to Congress. In any event, "[a]mbiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner,* 513 U.S. 115, 118, 115 S.Ct. 552, 555, 130 L.Ed.2d 462 (1994). Read in the context of the full section 5110, subsection (b)(1) applies only to those awards of disability compensation actually based on a claim filed within one year after the veteran's separation.

■ In the matter before the Court, the appellant filed an application for disability compensation within one year after his separation, but it was denied. His subsequent

application for disability compensation, filed 35 years later, was granted. Subsection (b)(1) does not apply to his award of disability compensation because the award is based on an application filed far more than one year after his discharge from military service. Rather, the effective date is determined under subsection (a) of section 5110. That effective date, as the Board found under the facts of this case, is November 15, 1990, the date the appellant filed his application for service connection for prostate cancer.

## B. Equal Protection

■ The appellant asserts that the provisions of 38 U.S.C. § 5110(a) and (b)(1) violate the equal protection component of the Fifth Amendment Due Process Clause because they preclude him from receiving retroactive disability compensation, as explained in Part II.A., whereas under section 5110(b)(1), veterans who file a successful application for disability compensation within one year after separation are granted retroactive disability compensation. The Board did not discuss this issue in the decision presently on appeal to this Court.

■ The Court may decide questions of constitutional law in the first instance where there is no need for additional factual development. *See Giancaterino v. Brown,* 7 Vet. App. 555, 557 (1995) (holding that when "[t]he facts are not in dispute, and the only issue is purely a constitutional claim, . . . this Court is empowered to make determinations regarding constitutional claims" in the first instance); *see also* 38 U.S.C. §§ 7252, 7261(a)(1), (a)(3); *Saunders v. Brown,* 4 Vet. App. 320, 326 (1993) (explaining that administrative agencies like the BVA are " 'entitled to pass on constitutional claims but they are not required to do so.' " (quoting *Plaquemines Port v. Federal Maritime Comm'n,* 838 F.2d 536, 544 (D.C.Cir.1988))); *Suttmann v. Brown,* 5 Vet.App. 127, 139 (1993) (explaining that because the Court's review is limited to the record of proceedings before the Secretary and the Board, generally constitutional claims must be *raised* in the first

instance before the VARO or the BVA). The appellant raised the equal protection issue to the Board during a hearing before a single Board member in December 1992. The Board did not discuss the constitutional claim in its 1993 remand order or in its subsequent decision in 1994. The appellant's claim is a question of pure constitutional law and the facts in this case are not in dispute. Therefore, the Court may review the appellant's constitutional claim for the first time on appeal.

■ "In determining whether there has been a violation of due process, the Supreme Court applies the same standard to the federal government that it applies to the states under the Equal Protection Clause of the Fourteenth Amendment." *Robinson v. Brown,* 9 Vet.App. 398, 401 (1996); *Suttmann, supra; Saunders,* 4 Vet.App. at 325; *see also Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). A statute need only meet a rational basis test unless a suspect classification or fundamental right is involved. *See Robinson, supra.* Social and economic legislation carries a presumption of constitutionality that can be overcome only by a clear showing of arbitrariness and irrationality. *See id.* For the appellant to demonstrate a constitutional violation, he must show that the effective date statute in question "does not bear any rational relationship to a legitimate government interest." *Id.*

■ The appellant claims that the statute is unconstitutional because it is not rationally related to "the purpose of compensating needy veterans." The appellant does not understand the height of the standard he must meet. For the statute to be constitutional, it need only have *any* legitimate purpose and "will not be set aside if any state of facts reasonably may be conceived to justify it." *Robinson, supra* (quoting *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)). In fact, the Court is not limited to the expressions of congressional intent found in the language of the statute or its underlying legislative history, but may itself hypothesize legislative purposes. *See McGowan, supra.*

Under 38 U.S.C. § 5110(b)(1), Congress decided that veterans awarded disability compensation based on a claim filed within one year after separation should receive retroactive benefits. This provision appears to give veterans who may be disabled at the time of discharge some breathing room to file a claim without losing any possible benefits. Congress could have several legitimate reasons for not extending this benefit for a period greater than one year. The most obvious reasons would be to ease the financial burden on the nation and the administrative burden on the Secretary. It is reasonable to believe that evidentiary findings will become more difficult after one year. For example, not only does a rating board establish service connection, but it must rate the degree of a veteran's disability. It is logical to presume that a veteran's degree of disability within one year after discharge is the same as at the time of discharge. Applying the same presumption twenty or thirty years thereafter would not be reasonable. The appellant has failed to overcome the presumption of constitutionality afforded section 5110(a) and (b)(1) under the rational basis test.

### III. CONCLUSION

After consideration of the pleadings and the oral arguments of the parties and a review of the record, the Court holds that the provisions of 38 U.S.C. § 5110(a) and (b)(1) do not violate the principles of equal protection under the Fifth Amendment Due Process Clause. The October 31, 1994, decision of the Board is AFFIRMED.

KRAMER, Judge, dissenting:

The appellant asserts that the effective date statute found at 38 U.S.C. § 5110 violates the equal protection component of the Fifth Amendment Due Process Clause and is, therefore, unconstitutional. Brief at 5–6. His averment of unconstitutionality, in essence, centers on the proposition that 38

U.S.C. § 5110, and by implication its implementing regulation, 38 C.F.R. § 3.400 (1996), cannot provide him with any retroactive entitlement. In regard to possible retroactive entitlement, because the BVA failed to address 38 U.S.C. § 5110(a), (b)(1), and their implementing regulations 38 C.F.R. § 3.400, (b)(2)(i) (1996), the Court's consideration of any constitutional issue is premature.

Sections 5110(a) and (b)(1) of title 38, U.S.Code, provide:

> (a) Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

> (b)(1) The effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release.

The implementing regulation for section 5110(a) is 38 C.F.R. § 3.400, which provides as follows:

> Except as otherwise provided, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later.

The implementing regulation for section 5110(b)(1) is 38 C.F.R. § 3.400(b)(2)(i), which provides, in pertinent part, as follows:

> (2) *Disability compensation*—(i) *Direct service compensation*.... Day following separation from active service or date entitlement arose if claim is received within 1 year after separation from service; otherwise, date of receipt of claim, or date entitlement arose, whichever is later.

**I.**

In statutory interpretation, if "the plain meaning of a statute is discernible, that 'plain meaning must be given effect.'" *Johnson v. Brown,* 9 Vet.App. 369, 371 (1996) (citing *Tallman v. Brown,* 7 Vet.App. 453, 460 (1995)); *see also Brown v. Gardner,* 513 U.S. 115, 120, 115 S.Ct. 552, 556, 130 L.Ed.2d 462 (1994). "Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." *Gardner v. Derwinski,* 1 Vet.App. 584, 586 (1991) (citing *Bethesda Hospital Ass'n v. Bowen,* 485 U.S. 399, 403–05, 108 S.Ct. 1255, 1258–59, 99 L.Ed.2d 460 (1988)), *aff'd sub nom. Gardner v. Brown,* 5 F.3d 1456 (Fed.Cir.1993), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). Therefore, "each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole." 2A NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed.1992) [hereinafter 2A SINGER]. The "plain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner,* 1 Vet.App. at 586–87 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). The "absurd result" exception to the plain meaning rule is narrow and limited to situations "where it is quite impossible that Congress could have intended the result ... and where the alleged absurdity is so clear as to be obvious to most anyone." *Gardner,* 1 Vet.App. at 587 (quoting *Public Citizen v. U.S. Department of Justice,* 491 U.S. 440, 470–71, 109 S.Ct. 2558, 2575–76, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring)).

The plain meaning of section 5110(a) and 38 C.F.R. § 3.400 ties the effective date of an award of service connection to the application on which the award is based. However, section 5110(b)(1) and its implementing regulation, 38 C.F.R. § 3.400(b)(2)(i), do not specify whether the effective date is to be based on the unsuccessful application that was filed within a year from discharge (here, the 1954 application) or the application from which the

award derives (here, the November 1990 application).

The Secretary argues that the plain meaning of 38 U.S.C. § 5110(b)(1) refers only to the application from which the award derives because such a reading comports with the structure of 38 U.S.C. § 5110 taken as a totality, and he argues that certain other subsections of 38 U.S.C. § 5110 would be impacted by reading subsection (b)(1)'s reference to application as referring to an unsuccessful application filed within a year of discharge. These subsections, however, are not applicable to the facts of this case and their wording is different from that of subsection (b)(1).

The Secretary further argues that such a reading of subsection (b)(1) would conflict with subsection (i) of 38 U.S.C. § 5110, and that the two subsections can be rendered harmonious only by adopting his construction. Subsection (i) governs the specific situation in which an award of service connection is made with respect to a claim reopened on the basis of new and material evidence resulting from the correction of military records or the change or modification of a discharge or dismissal. Under subsection (i) the effective date for an award of service connection cannot be earlier than the date of the administrative change that resulted in the successful reopened claim. Any perception by the Secretary as to a conflict between the two subsections, (b)(1) and (i) of section 5110, would be limited to the situation in which a veteran filed an unsuccessful application within a year of discharge and, thereafter, reopened a successful claim predicated on a correction of military records or a change in the basis of discharge or dismissal. However, as already noted, with respect to the other subsections pointed to by the Secretary, subsection (i) is also not applicable to the present case and the wording of subsection (i) is also different from the wording of subsection (b)(1). Moreover, even in the specific situation in which a veteran filed an unsuccessful application within a year of discharge and, thereafter, reopened a successful claim predicated on a correction of military records or a change in the basis of discharge or dismissal, the normal rules of statutory construction, which provide that the specific governs over the general and that a later appearing provision prevails over an earlier provision, might resolve the perceived conflict. See 2A SINGER, supra; 2B NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION, § 51.05 (5th ed.1992) [hereinafter 2B SINGER]. Finally, the Secretary's construction of subsection (b)(1) does not take into account any date of entitlement limitation that might be provided for in 38 C.F.R. § 3.400(b)(2)(i), discussed in section II., infra.

In addition, the Secretary argues that to predicate an effective date on a failed application, received within a year of discharge, would create an absurd result. The absurd result doctrine usually only arises where a statute has only one meaning and not as a general methodology for resolving statutory ambiguity. See Gardner, 1 Vet.App. at 587. Even assuming the applicability of this doctrine, one might reasonably contend that retroactivity to the date of discharge based on a failed application filed within a year of discharge for an award of service connection based on a claim reopened years later, does not provide for an absurd result. The reasonableness of such a contention might be predicated on the fact that an award of service connection at any time, by definition, requires a determination that the particular condition was incurred in or aggravated in service. See Caluza v. Brown, 7 Vet.App. 498, 505 (1995). On the other hand, one might reasonably contend that retroactivity, especially for a long period of time, for a particular disability rating that far exceeds the degree of disability present at the time of the failed application would indeed lead to an absurd result. However, because of the possible limitations on such retroactivity discussed in section II., infra, an absurd result might be avoided.

As indicated supra, because 38 U.S.C. § 5110(b)(1) and 38 C.F.R. § 3.400(b)(2)(i) do not specify whether the effective date is to be based on the unsuccessful application that was filed within a year from discharge or the application from which the award derives, it may be appropriate to examine both legislative history and VA's interpretation of sec-

tion 5110(b)(1), beyond its promulgation of 38 C.F.R. § 3.400(b)(2)(i). *See Gardner*, 1 Vet. App. at 587–88; A SINGER, § 48.01; 2B SINGER, § 49.05. It appears that only a single document might be viewed as bearing on either consideration. The document, a July 27, 1972, VA memorandum from the Chief Benefits Director to the General Counsel, describes VA's legislative proposal to the 1st Session, 93rd Congress, to amend 38 U.S.C. § 3010 (now 38 U.S.C. § 5110) to allow for liberalized effective dates for payment of disability pension awards. The document, which also describes some of the other liberalizing exceptions already in existence at the time of the proposed legislation, states, in pertinent part:

> The veteran who has just been discharged or released from active service has a great many things on his mind in order to satisfactorily adjust from the military to civilian way of life, the least of which may be his disability compensation claim from the VA. He is concerned with obtaining adequate and suitable housing for himself and/or his family and an adequate and suitable job. If he delays in filing his claim for not more than a year, he has not been deprived of the compensation, since his award will be made effective the day following his discharge or release from service.

Secretary's Appendix to Supplemental Memorandum in Response to Court Order, Volume I at 139. To the extent that this document might bear on the question of which application is the triggering application for effective date purposes, I note the following. First, an interpretation that appears only in an agency's internal communications carries less weight than one that is publicly declared. *See Flores v. Bowen*, 790 F.2d 740 (9th Cir. 1986); *Montana Power Co. v. Environmental Protection Agency*, 429 F.Supp. 683 (D.Mont.1977). Second, the document does not appear to be intended to construe which application should be the basis for the assignment of an effective date. Third, although the document references retroactivity in the context of a veteran's needing time to put his affairs in order after discharge, it does not exclude a longer period of retroactivity. Finally, a VA position that adopts a construction less beneficial to a veteran, as well as

any VA resolution of statutory or regulatory ambiguity, would have to take into account the impact of *Gardner* that held that "interpretive doubt is to be construed in the veteran's favor." 513 U.S. at 117, 118, 115 S.Ct. at 554–55, 555 (citations omitted).

## II.

Section 5110(a) appears to impose a "facts found" limitation on the effective date of an award and applies "[u]nless specifically provided otherwise in this chapter." Section 5110(b)(1), obviously a provision "in this chapter," makes no reference to the "facts found" limitation in section 5110(a). Thus, one question is whether section 5110(a) superimposes a "facts found" limitation on the exceptions to section 5110(a) that do not otherwise specifically address facts found. In other words, because section 5110(b)(1) is silent as to "facts found," is the "facts found" limitation of 5110(a) superimposed on it?

As possibly bearing on this question, both 38 C.F.R. § 3.400 and 38 C.F.R. § 3.400(b)(2)(i) use the phrase "date entitlement arose" rather than the phrase "facts found." Section 3.400 cites section 5110(a) as its authority, and the context of its wording suggests that the "date entitlement arose" may refer to "facts found." In addition, although paragraph (b)(2)(i) of 38 C.F.R. § 3.400 does not specifically cite section 5110(b)(1) or any other statute for its authority, its use of the "date of receipt of claim, or date entitlement arose, whichever is later" language, the same test as provided for in general section 3.400, also suggests that the "date entitlement arose" may refer to "facts found." It should be further noted that the "date entitlement arose" language is used twice in the first sentence of paragraph (b)(2)(i), once before the semicolon and once after, and that it is the "date entitlement arose" language placed after the semicolon that is used in conjunction with the test of "date of the receipt of claim or the date entitlement arose, whichever is later" in section 3.400. Although it is the "date entitlement arose" language placed before the semicolon that we are concerned with, there is no apparent reason to give the two identical phrases different meanings. (If "it is a 'basic cannon of statutory construction that

identical terms within an Act bear the same meaning,'" *see In re Fee Agreement of Smith,* 5 Vet.App. 307, 310 (1993) (en banc) (Steinberg, J., dissenting) (citing *See Estate of Cowart v. Nicklos Drilling,* 505 U.S. 469, 479, 112 S.Ct. 2589, 2596, 120 L.Ed.2d 379 (1992)), a fortiori, such terms should bear the same meaning if they appear in the same sentence.) Whereas section 5110(a) is ambiguous as to the superimposition of "facts found" on section 5110(b)(1), 38 C.F.R. § 3.400(b)(2)(i), the regulation implementing section 5110(b)(1), appears to superimpose a "facts found" limitation on retroactivity, thus potentially avoiding an absurd result regardless of whether the unsuccessful application filed within a year of service or the later filed successful application is the triggering application for the determination of an effective date (*see* Section I., *supra*). *See Winn v. Brown,* 8 Vet.App. 510, 515 (1996) ("The Court will sustain a regulation that is consistent with the language of the statute and is a plausible or reasonable interpretation of the law") (citing *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984)).

### III.

Subsections (a) and (b)(1) of § 5110 and their implementing regulations raise the issues, first, of whether the effective date is to be based on an unsuccessful application that was filed within a year from discharge or on an application from which an award derives and second, the impact both of the phrase "date entitlement arose" in 38 C.F.R. § 3.400(b)(2)(i) and of *Gardner* on the determination of that issue. Rather than follow the course taken by the majority, especially because the BVA has not addressed the impact of 38 C.F.R. § 3.400(b)(2)(i), *see SEC v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 459–60, 87 L.Ed. 626 (1943) (where an agency determination of policy is required, but has not been made, a judicial judgment should not be substituted for an administrative judgment), I would vacate the BVA decision and remand these issues for BVA consideration.