**Clyde V. WILLIAMS, Appellant,**

v.

**Hershel W. GOBER, Acting Secretary of Veterans Affairs, Appellee.**

No. 95–1184.

United States Court of Veterans Appeals.

Sept. 16, 1997.

Stephen L. Purcell, Washington, DC, was on the brief for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Jacqueline M. Sims, Washington, DC, were on the brief for appellee.

Before KRAMER, HOLDAWAY, and IVERS, Judges.

HOLDAWAY, Judge:

The appellant, Clyde V. Williams, appeals from the November 8, 1995, decision of the Board of Veterans' Appeals (BVA or Board) that determined, inter alia, that the appellant was not entitled to an effective date earlier than August 13, 1984, for an award of service connection for mitochondrial myopathy manifested by disabilities in other than the lower extremities. The appellant does not challenge the two additional determinations made by the Board: (1) that "[a] minimum rating of 30 percent should be applied effective September 10, 1975[,] through August 12, 1984[,] (subject to the already assigned separate 10 percent ratings) for the service-connected mitochondrial myopathy as manifested by involvement of the lower extremities"; and (2) that the appellant was not entitled to an effective date earlier than August 13, 1984, for an award of service connection for atypical depression with generalized anxiety disorder. The Court considers the appellant to have abandoned those issues on appeal and will not review them. *See Bucklinger v. Brown*, 5 Vet.App. 435 (1993). Both parties have filed briefs. The Court has jurisdiction over the case under 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the decision of the Board.

## I. FACTS

The appellant served on active duty in the United States Army from March 1974 to September 1975. The appellant's induction examination noted that his lower extremities were normal. The appellant was treated several times while in service for bilateral leg cramps. In October 1974, the appellant was hospitalized for more than one month for leg cramps that were ultimately diagnosed as bilateral anterior compartment syndrome (ACS). "Anterior tibial compartment syndrome" is defined as "rapid swelling, increased tension, pain, and ischemia necrosis of the muscles of the anterior tibial compartment of the leg; the skin becomes glossy, erythematous, and edematous as the necrosis

occurs. The cause is unknown, but usually there is a history of excessive exertion." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1624 (28th ed.1988) [hereinafter DORLAND'S]. During his hospitalization, he underwent related surgery. In March 1975, the appellant was again hospitalized for continued complaints of pain and cramping in his legs associated with bilateral ACS. The appellant's separation examination reported a diagnosis of "[b]ilateral [ACS], chronic."

The appellant filed his initial claim for service connection for, inter alia, bilateral ACS in October 1975. In July 1976, the VA regional office (VARO) granted the appellant service connection for, inter alia, bilateral ACS. It assigned the appellant separate 10% disability ratings for each leg, effective September 10, 1975, the day after his separation from service. The VARO confirmed that decision in March and November 1977.

A December 1977 VA neurology progress note suggested that myopathy of unknown etiology, as the cause of the appellant's leg pains, should be ruled out through further examination. Myopathy is "any disease of a muscle." DORLAND'S at 1094. In January 1978, the appellant filed a request for increased disability compensation for his bilateral ACS. In March 1978, the appellant was afforded a VA compensation and pension examination. The examiner's diagnosis was bilateral ACS with residual pain that limited the appellant's activity. A March 1978 VA neurological progress note indicated that it was "following up on painful myopathy in calves and occ[asionally in] forearms appearing [with] exercise." The examiner's diagnostic impression was myopathy of unknown etiology. The VARO confirmed again in June 1978 the appellant's separate 10% disability ratings for each leg for ACS.

In August 1978, the appellant was afforded VA orthopedic and neurological examinations. The orthopedic examiner reported that the appellant's complaints were not explained by the objective findings or on the basis of classical anterior compartment syndrome. The neurologist found no evidence of myopathy or anterior compartment syndrome and could not explain the appellant's

symptoms. In September 1978, the VARO found no basis to increase the appellant's award and confirmed and continued its original rating decision.

In November 1978, the appellant was evaluated at a VA medical facility for probable primary hyperparathyroidism and to rule out myopathy characterized by painful muscle cramps. Hyperparathyroidism is "a condition caused by excessive amounts of parathyroid hormone, which invokes hypercalcemia and hypophosphatemia and affects the functions of many cell types." DORLAND'S at 798. A January 1979 VA progress note stated that the appellant continued to have muscle pain in all muscle groups, and that review of the data led to a conclusion that the appellant had early first-degree hyperparathyroidism. In January 1979, the appellant filed a claim for service connection for hyperparathyroidism. VA progress notes from February and April 1979 also reported that hyperparathyroidism was causing the appellant's muscle cramps. The VARO denied the appellant service connection for hyperparathyroidism because there was no evidence of the disorder during service. Subsequently, the VARO received a letter from a VA physician who opined that the appellant did have the parathyroid condition while on active duty. In November 1980, the VARO granted service connection and a 10% rating for the appellant's hyperparathyroidism.

In December 1980, the appellant filed a Notice of Disagreement (NOD). The appellant claimed that he should receive a 100% disability rating, and he requested a rating for total disability based on individual unemployability (TDIU). In April 1981, the VARO denied the appellant's request for TDIU. In July 1981, the appellant filed a substantive appeal to the BVA.

A December 1981 VA examination report noted a diagnosis of hyperparathyroidism with refractory muscle cramping. The examiner also noted that he did not feel that the appellant's symptoms were related to ACS. A VA orthopedic examination, also performed in December 1981, found that there was no current evidence of ACS. In March 1982, the VARO confirmed its denial of entitlement to increased ratings for hyperpara-thyroidism and ACS and to TDIU. In September 1982, the BVA determined that the appellant was entitled to a 20% disability rating for hyperparathyroidism, but denied him entitlement to an effective date earlier than January 1979. The BVA also found that the appellant was not entitled to TDIU.

A June 1983 VA medical record reports that, after testing, the examiner's diagnostic impression was episodic hypercalcemia. The examiner opined that he doubted the appellant had hyperparathyroidism. In September 1983, Dr. Orlo H. Clark, a VA staff physician, wrote a letter to the appellant stating that the appellant did not currently have hyperparathyroidism, but he was being followed because some patients have intermittent hypercalcemia. That month, the VARO reduced the appellant's disability rating for hyperparathyroidism to 0%, but continued the appellant's separate 10% disability ratings for ACS in each leg. The appellant timely appealed to the BVA. In July 1984, the BVA determined that the appellant was not entitled to increased ratings for ACS in his legs or a compensable rating for hyperparathyroidism.

On August 13, 1984, the appellant was hospitalized for muscle pain and weakness in all muscle groups. A muscle biopsy was performed on the appellant's right thigh and sent to the University of California, San Francisco, for analysis. In December 1984, Dr. Daniel H. Lowenstein, VA resident in Neurology, wrote the following:

> A muscle biopsy was performed on [August 20, 1984], and this revealed some hypertrophy of mostly type 1 fibers, with some moth-eaten and targetoid form as well. These findings were felt to be nonspecific, perhaps attributable to chronic peripheral neuropathy.

> At the present time we are unable to ascribe this patient's symptoms and laboratory findings to any definable neurological disorder. We are thus attempting to treat him symptomatically.

In April 1985, the appellant sent the VARO a letter requesting increased disability compensation based on, inter alia, the muscle biopsy reports. The VARO found that the

appellant did not warrant an increased rating because the findings were inconclusive.

VA medical records show that the appellant continued receiving treatment and evaluations for his muscle disorder including his back, legs, arms, and neck, but with no conclusive results. During this time the VARO confirmed and continued the appellant's separate 10% disability ratings for each leg due to ACS. In 1987, the appellant was diagnosed with fibrositis in his lower extremities. In October 1987, the VARO found that the fibrositis was not related to the appellant's service-connected ACS and again continued his separate 10% disability ratings.

In March 1988, muscle biopsies of the left and right leg were performed. Analysis of the appellant's muscle tissue revealed mitochondrial myopathy. A letter from Dr. Marcus Clark reported that the appellant's muscle cramping was secondary to the mitochondrial myopathy. A letter from Dr. Richard K. Olney explained that a diagnosis of mitochondrial myopathy is evidence that the appellant's muscle pain was potentially caused by a metabolic or biochemical abnormality within his muscles.

In May 1989, the VA Chief Medical Officer requested that the appellant be admitted to a VA neurology service for observation and evaluation concerning the appellant's claim that the mitochondrial myopathy was first manifested in service. The appellant was admitted to the neurology service at a VA medical center for eleven days for observation and evaluation. In a May 1989 letter from the chief of neurology service, he reported the following:

After examining the patient and reviewing all pertinent documentation[,] it is my opinion that the diagnosis of mitochondrial myopathy is correct. This is a congenital condition which was first manifested by exercise intolerance in 1974 during the veteran's period of military service. The diagnosis was later documented by biopsy.

In September 1989, the VARO granted the appellant service connection for mitochondrial myopathy and assigned separate 20% disability ratings for each of the appellant's right and left upper extremities and right and left lower extremities effective August

13, 1984, the date of the appellant's hospitalization for the first muscle biopsy. The VARO substituted the term mitochondrial myopathy for ACS in discussing the disability ratings for the appellant's lower extremities, but noted that separate ratings of 10% each for the appellant's lower extremities had been effective since 1975. The appellant's combined rating, which included service-connected disabilities other than the myopathy, was 80%. In October 1989, the appellant filed an NOD in which he stated that he should be service connected for myopathy of the entire musculoskeletal system including his back and neck, and the effective date for myopathy of his entire system should be August 1975. The appellant filed a substantive appeal to the Board in February 1990. In February 1991, the BVA remanded to the VARO the issue of entitlement to service connection for mitochondrial myopathy in the appellant's back and neck, and the Board deferred reviewing the issue of an earlier effective date until the VARO adjudicated the service connection issue.

An April 1991 letter from the VA chief of the neurology service stated that review of the appellant's records suggested that he had mitochondrial myopathy affecting all skeletal muscles and that the appellant's back and neck pain were probably due to the myopathy. In July 1991, the VARO assigned the appellant a disability rating of 20% for myopathy in his neck and 10% for myopathy in his back. The VARO increased the appellant's combined disability rating to 90% effective retroactive to August 13, 1984.

In June 1992, the BVA determined that August 13, 1984, was the date entitlement to service connection for mitochondrial myopathy arose and that it was the appropriate effective date for the appellant's award of disability compensation. The appellant filed a Notice of Appeal with this Court. The parties filed a joint motion for remand. In March 1994, this Court issued an order granting the joint motion for remand, vacating the BVA's June 1992 decision, and remanding the matter for further reasons and bases consistent with the joint motion for remand. In May 1995, the BVA remanded that matter to the VARO with instructions to

explain the assignment of the various effective dates in the case and to adjudicate the question of clear and unmistakable error in rating decisions prior to August 1984. After readjudication by the VARO, on November 8, 1995, the Board denied entitlement to an effective date earlier than August 13, 1984, for disability compensation for mitochondrial myopathy affecting other than his lower extremities.

## II. ANALYSIS

■ The appellant suffers from an ailment that was apparently obscure in nature and difficult to diagnose. Medical science is not always an exact art. In any event, the appellant traveled a long and frustrating path with many conflicting medical opinions before the ultimate diagnosis of mitochondrial myopathy could be made. From the diagnoses of ACS, hyperparathyroidism, and fibrositis, to the current diagnosis of mitochondrial myopathy, the medical examiners have been alternatively convinced and unsure of the actual etiology of the appellant's muscle cramps. In fact, at times the medical examiners reported that the causes of the appellant's complaints were unknown and that he could be treated only symptomatically. Myopathy as a possible cause of the appellant's muscle disorder was recorded as early as 1977, but was not actually confirmed by clinical diagnosis until 1988. The appellant contends that because it is now agreed that his initial complaints of muscle cramping in service were the result of mitochondrial myopathy, the effective date of his award of disability compensation for mitochondrial myopathy affecting other than his lower extremities should relate back to the day after the date of his separation from the military, September 10, 1975. The only possible method by which the appellant could obtain a retroactive award of disability compensation effective in September 1975 would be to prove that the July 1976 rating decision was the product of clear and unmistakable error (CUE). *See* 38 C.F.R. § 3.105(a) (1996) ("[p]revious determinations which are final and binding ... will be accepted as correct in the absence of [CUE]. Where evidence establishes such error, the prior decision will be reversed or amended"). The Board found that the appellant had not

raised the issue of CUE as required under *Fugo v. Brown,* 6 Vet.App. 40 (1993), and the appellant has not alleged that the Board's finding with respect to CUE was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 38 U.S.C. § 7261(a)(3)(A); *see also Russell v. Principi,* 3 Vet.App. 310, 315 (1992) (explaining that the Court's review of Board decisions regarding CUE is "limited to determining whether the BVA decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' "). Instead, the appellant contends that the Board's decision to deny him an earlier effective date was clearly erroneous.

■ A BVA determination of an effective date for disability compensation is a finding of fact which the Court reviews under the "clearly erroneous" standard of review. *See* 38 U.S.C. § 7261(a)(4); *Stewart v. Brown,* 10 Vet.App. 15, 17 (1997); *Quarles v. Derwinski,* 3 Vet.App. 129, 135 (1992). A finding of fact is clearly erroneous when "although there is enough evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Gilbert v. Derwinski,* 1 Vet.App. 49, 52 (1990). "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, [the Court] cannot overturn them." *Id.* at 53.

The effective date of the appellant's award of disability compensation due to service connection for mitochondrial myopathy affecting other than his lower extremities is set according to the effective date provision found at 38 U.S.C. § 5110(a), which states,

(a) Unless specifically provided otherwise ..., the effective date of an award based on an original claim, a claim to reopen after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

*See also* 38 C.F.R. § 3.400 (1996) (implementing regulation). " 'Application' is not defined in the statute. However, in the regulations, 'claim' and 'application' are considered equivalent and are defined broadly to include 'a formal or informal communication in writing requesting a determination of entitlement, or evidencing a belief in entitlement, to a benefit.' " *Servello v. Derwinski,* 3 Vet. App. 196, 198 (1992) (quoting 38 C.F.R. § 3.1(p) (1996)). Once a formal claim for disability compensation has been allowed, the date of examination or hospitalization at a VA hospital will be accepted as the date of receipt of an informal claim. *See* 38 C.F.R. §§ 3.155(c), 3.157(a)-(b)(1) (1996). The Board found that the appellant's August 8, 1984, admission to a VA medical center for a muscle biopsy and for observation and evaluation was "the first real indication from the evidence in the record that the veteran was suffering from mitochondrial myopathy." The Board accepted August 8, 1984, as the date an informal claim for service connection for mitochondrial myopathy was received. The Board was probably generous in finding that the August 8, 1984, hospital admission report was an informal claim for increased disability compensation based on mitochondrial myopathy because the actual medical findings were nonspecific, and it was not until 1988 that an analysis of the appellant's second muscle biopsy resulted in an actual diagnosis of mitochondrial myopathy. However, even assuming that the Board's decision was incorrect in determining that the August 1984 hospital admission was an informal claim and therefore the effective date for his award of disability compensation, any possible error that the Board may have committed favored the appellant and would be nonprejudicial error. *See* 38 U.S.C. § 7261(b) ("the Court shall take due account of the rule of prejudicial error"). The appellant has not pointed to any evidence of record establishing that a formal or informal claim for service connection for mitochondrial myopathy affecting other than his lower extremities was filed with the VARO prior to August 8, 1984.

The appellant argues that under 38 U.S.C. § 5110(b)(1), the effective date for his current award of disability compensation for mitochondrial myopathy based on disabilities other than the lower extremities should be backdated to September 1975 because he filed an application for disability compensation within one year of his date of separation from the military. This subsection provides:

> (b)(1) The effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release.

38 U.S.C. § 5110(b)(1). In *Wright v. Gober,* 10 Vet.App. 343, 346 (1997), the Court held that § 5110(b)(1) was applicable only if the award of disability compensation was granted pursuant to an application actually received within one year of the claimant's date of separation from service. The appellant's award of disability compensation for mitochondrial myopathy affecting other than his lower extremities was not granted based on his claim filed in 1975; therefore, the appellant is not eligible for a retroactive effective date under § 5110(b)(1).

### III. CONCLUSION

After consideration of the pleadings of the parties and a review of the record, the Court holds that the appellant has not demonstrated that the Board committed either legal or factual error which would warrant reversal or remand. The Court is also satisfied that the BVA decision fulfills the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert, supra.* The November 8, 1995, decision of the Board is AFFIRMED.