# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-132

Stephen T. McGrath, Appellant,

v.

Hershel W. Gober,
Acting Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided  August 16, 2000  )

*Roger W. Rutherford*, of Norton, Virginia, was on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Mary Ann Flynn*, Deputy Assistant General Counsel; and *Brian B. Rippel*, all of Washington, D.C., were on the brief for the appellee.

Before HOLDAWAY, IVERS, and STEINBERG, *Judges*.

HOLDAWAY, *Judge*, filed the opinion of the Court.  STEINBERG, *Judge*, filed a separate opinion concurring in part and dissenting in part.

HOLDAWAY, *Judge*: The appellant, Stephen T. McGrath, appeals from an October 1998 decision of the Board of Veterans' Appeals (BVA or Board) which (1) denied service connection for schizophrenia, (2) denied an increased disability rating for his service-connected post-traumatic stress disorder (PTSD), and (3) denied an effective date earlier than June 1992 for that PTSD condition.  Both parties have filed briefs.  The Court has jurisdiction of the case under 38 U.S.C. § 7252(a).  For the following reasons, the Court will affirm in part and vacate in part the decision of the Board, remand a matter for readjudication, and dismiss the appeal in part.

1

## I. FACTS

The appellant served on active duty in the U.S. Navy from July 1942 to February 1954. His service medical records indicated that in February 1944 he sustained multiple shrapnel wounds to his right leg during combat operations. Although trained as a dentist, the appellant was serving as an anesthesiologist at the time of his combat injury. His service medical records did not reflect that the appellant suffered from any sort of mental or nervous disorder during his military service. In March 1954, the appellant filed claims for compensation for residuals of several conditions for which he was treated during military service. At that time, he did not file a claim for any mental or nervous disability.

In January 1970, the appellant reported for treatment at a VA hospital for alcoholism. The admission report noted that he had been treated for alcoholism on several other occasions. The report stated that "[a]t the time of admission, the patient manifested tension, perplexity, vagueness of speech, insecurity, bizarre delusions of a persecutory nature, impairment of memory, and depression." The appellant told his treating physician that he had not been able to work for three years. The physician diagnosed the appellant with alcohol addiction, drug dependence, and latent schizophrenia. In May 1970, a VA regional office (VARO) determined that the appellant's schizophrenia was not related to his military service. In December 1971, the appellant wrote a letter to the VARO which related to his claim for a "nervous condition." The letter stated that he had been treated during 1951 at a U.S. Naval hospital and on several occasions after his discharge for a nervous condition. In January 1972, the appellant wrote a second letter to the VARO to clarify his claim. In this letter, he stated:

> I was in the invasion of Roi-Namur, Saipan, Tinian and Iwo Jima as an assault dentist with the 4th Marine Division and was wounded (Purple Heart). It was suggested at the [Naval Supply Center], Lido Beach, N.Y. by the psychiatrist that I go to [a VA Hospital] for a work-up and possible treatment, with a diagnosis of anxiety neurosis, combat-induced. I was too "gung-ho" and decided to work through it.

> Several years later . . . this anxiety evoked an alcoholic response, and I was referred . . . to [Captain] Nichols . . . a psychiatrist . . . . I continued to see Captain Nichols on an out-patient basis until I was transferred . . . .

Later that month, Dr. Russell Barton, director of the Rochester State Hospital wrote a letter to the VARO which stated:

2

Stephen McGrath was admitted to this hospital on August 11, 1965 on a Voluntary [sic] certification because of depression and excessive use of alcohol. He had a history of alcoholism in the past, but had abstained for nine years prior to admission. Shortly before admission, he had several operations for appendicitis and peritonitis, and a laminectomy for fracture of the spine. At the same time, his wife left him. He then became depressed, and started drinking again.

. . . .

On December 29, 1965, the patient was discharged from the hospital. Final diagnosis was Without Mental Disorder, Alcoholism.

In January 1972, the VARO also obtained the records from Middletown State Hospital. First, these records reviewed the appellant's prior medical history and noted that the appellant had been treated at Benedictine Hospital in October 1953 for acute alcoholism, malnutrition, and avitaminosis. The records revealed that the appellant was treated by a VA hospital in September 1954 and diagnosed with "Emotionally Unstable Personality with addiction to drugs and alcohol." The records indicated that an electroencephalogram performed in September 1964 showed gross abnormalities, suggesting encephalopathic process, and that he had been treated for alcoholism in December 1964. Second, the records stated that the appellant was admitted to Middletown State Hospital in February 1965. At this time, the appellant told his treating physician that "he had to quit [the Navy] due to his drinking problem." After service, the appellant related that he started his own dental practice and "was doing well except for his habit of drinking alcohol and taking several drugs in order to quiet his nerves down." He stated that since his discharge "his condition has been progressively deteriorating." The examining psychiatrist found the appellant not to be psychotic but noted that he had been suffering from auditory hallucinations. Finally, the records then indicated that the appellant was admitted again in May 1965. Upon admission, the appellant's examining physician, Dr. Albert O. Rossi, found him to be intoxicated polyneuritic due to alcoholism. Dr. Rossi diagnosed the appellant with "Without Mental Disorder, Alcoholism." The appellant was readmitted to the hospital in August 1968 with the same diagnosis.

The VARO also obtained medical records from a local VA facility where the appellant had been receiving treatment for alcohol addiction, drug dependence, and schizophrenia in August 1971. In February 1972, the VARO denied his claim for compensation for schizophrenia. In March 1972, the appellant wrote a letter to his service representative which

3

repeated his earlier statements that he had received psychiatric care during military service. He stated:

> It seems incredible to me that my service medical records did not reveal this. As a matter of fact . . . my health record was locked in [a] safe, to prevent dissemination of the affair to the troops via someone's curiosity. I therefore suggest a review of the military health records to illustrate these points.

The VARO treated this letter as a Notice of Disagreement (NOD) and processed his appeal to the Board. In his substantive appeal to the Board, the appellant argued that "the underlying cause of the addiction was the anxiety neurosis induced by the stresses of . . . [combat]." Apparently, the Board never adjudicated this appeal.

In June 1978, the appellant was admitted to St. Albans Psychiatric Hospital for acute alcohol intoxication. The appellant stated at the time of his admission that he had been sober for over seven years. The report did not mention that the appellant suffered from any other psychiatric or nervous condition. In August 1978, the appellant was admitted to a VA medical center in Lyons, New Jersey for alcoholism. At the time of his admission, the appellant "was intoxicated, confused, and spoke with slurred speech." The appellant reported auditory hallucinations. In August 1978, the VARO determined that the appellant was 70% disabled due to a non-service-connected nervous reaction.

In June 1992, the appellant filed a claim for PTSD. He alleged that he was admitted to a U.S. Naval hospital in 1945 or 1946 for combat fatigue. In support of his claim, the appellant submitted treatment records from a local VA medical facility dated June 1992 which diagnosed him with depression, anxiety, alcohol addition, and PTSD of delayed onset and moderate degree. The reports noted that the Gulf War had triggered "intrusive memories and flashbacks of combat" which the appellant attempted to calm by using alcohol and drugs.

In October 1992, VA provided the appellant with a special PTSD examination conducted by Dr. W.H. Matthew. Dr. Matthew found the appellant to be mildly anxious but found his mood, affect, and thought processes to be normal. Dr. Matthew also noted that the appellant did not display any signs of depression. He diagnosed the appellant with, inter alia, anxiety disorder, history of alcohol dependence, and dependent personality traits. Dr. Matthew did not specifically diagnose the appellant with PTSD but rated his Global Assessment of Functioning (GAF) at 82.

4

In December 1992, the VARO denied his claim for PTSD and the appellant subsequently initiated an appeal to the Board. In May 1993, a psychological examination team at the post-traumatic stress program at the VA medical center in Mountain Home, Tennessee, examined the appellant and provided a psychological assessment. The team consisted of Barbara F. Key, a psychological examiner, Dr. Donald Henson, Jr., a staff psychiatrist, and Dr. Charles L. Walter, a psychiatrist and coordinator of the program. The appellant reported to the team that he had served as an anesthesiologist during combat operations in the Marshall Islands, Saipan, and Iwo Jima. He stated that on several occasions he felt that he was in immediate danger. He also reported that his alcohol use increased greatly during combat or other stressful situations. The appellant reported to the team that he suffered from depression, anxiety, decreased appetite, sleep disorder, and feelings of self-condemnation. The team found the appellant's mood, affect, and thought process to be normal but noted that the appellant appeared hypomanic in nature. The team report described his speech as "pressured and rapid . . . jump[ing] from one subject to another trying to discuss his military involvement." The report concluded that the appellant suffered from social and industrial impairment of a chronic nature and rated his GAF at 50.

In July 1993, the appellant submitted a letter to the VARO from Dr. Alfred J. Bennett, a physician specializing in osteopathy at a VA medical center. Dr. Bennett stated that after reviewing the appellant's medical history he concluded that the appellant suffered from delayed PTSD. In September 1993, after reviewing all of the evidence submitted since its previous denial, the VARO granted service connection and assigned a 30% disability rating effective June 1992, the date the appellant had filed his claim for PTSD. In November 1993, the appellant wrote a letter to the VARO and argued that he should be granted a 70% disability rating effective August 1978. In February 1994, the VARO denied his claims for an increased disability rating and an earlier effective date, and the appellant appealed that decision to the Board.

In May 1994, the appellant submitted a letter from Dr. Henson. In his letter, Dr. Henson stated that the appellant currently suffered from PTSD. Dr. Henson opined that in 1972, when the appellant had been diagnosed with schizophrenia, the appellant was "using large amounts of alcohol, which in conjunction with [his] PTSD, could have presented with similar

5

symptoms. This may explain why you were given a diagnosis at the time of schizophrenia." That same month, the appellant also submitted a letter from Dr. Robert H. Keiter. Dr. Keiter stated that he had been treating the appellant since January 1994. Dr. Keiter stated, "You related to me that you were diagnosed in the past with schizophrenia. In my experience with you, at no time have you demonstrated symptoms indicative of the diagnosis of schizophrenia." In August 1994, the appellant submitted another letter from Dr. Bennett. Dr. Bennett concluded that the appellant had been suffering demonstrable and overt symptoms of PTSD since May 1975 when he began treating the appellant.

From June 1995 to August 1995, the appellant was admitted to the Specialized Inpatient Post-Traumatic Stress Disorder Unit at the VA medical center in Salisbury, North Carolina. Dr. Robert N. Reynolds, the physician who completed the discharge report summarizing his hospital course, stated that the appellant was alert, oriented, and cooperative at all times. Dr. Reynolds found that the appellant had a history of emotional detachment, anger, intrusive thoughts, nightmares, sleep trouble, anxiety, and depression. The appellant denied any homicidal or suicidal ideations or hallucinations. Dr. Reynolds opined that at the time of his admission, the appellant's GAF was 6, which he added was "catastrophic." Dr. Reynolds diagnosed the appellant with PTSD and noted that the appellant's condition had "slightly improved" over the course of his stay. He rated the appellant's GAF at 40 at the time of his discharge. He concluded that the appellant "is unemployable due to PTSD and medical problems." Finally, Dr. Reynolds noted that the appellant would continue PTSD treatment on an outpatient basis.

In February 1997, the Board remanded the appellant's claim for further development and order the VARO to determine whether or not the appellant was entitled to service connection for schizophrenia. Pursuant to that remand, the VARO provided the appellant with a mental examination in March 1997 conducted by Dr. S. Shattan. The appellant reported to Dr. Shattan that he suffered from intrusive wartime recollections, difficulty with sleeping, nightmares, flashbacks, feelings of isolation, and anxiety. He noted that he often had emotional difficulty after watching war movies. After an extensive review of the appellant's medical history, Dr. Shattan concluded:

> Based on these findings it appears that the patient has a current diagnosis of PTSD, delayed, chronic, moderate. . . . The veteran is showing some mild

6

symptoms, such as social withdrawal and insomnia, but, according to his own description, he is generally functioning pretty well, has some meaningful interpersonal relationships, pursues hobbies in which he is interested.

Dr. Shattan rated his current GAF at 70 but noted that the appellant "has shown improvement from his previously more severe degree of disability and illness as a result of his treatments in various VA inpatient and outpatient programs."

After reviewing this evidence, the VARO determined that the appellant was not entitled to service connection for schizophrenia or an increased disability rating or an earlier effective date for PTSD. Thereafter, the matter was returned to the Board. The Board initially determined that the appellant's claim for schizophrenia was not well grounded. Regarding his claim for an earlier effective date for PTSD, the Board found that the appellant had a pending and unadjudicated claim for a nervous condition which would include a claim for PTSD since January 1972. Nonetheless, the Board determined that the VARO did not receive evidence which established that the appellant's nervous disorder was related to his military service until 1992, when he filed his claim for compensation for PTSD. The Board, therefore, found that the appellant was not entitled to an earlier effective date. Finally, the Board reviewed the facts of his claim under both the old and new ratings criteria for mental disorders and found that the appellant was not entitled to a higher disability rating for his PTSD condition. Under the old criteria, the Board concluded: "Although there is a conflict in the evidence, the preponderance of the evidence tends to establish that the manifestations are subject to periods of acute exacerbation, which the [sic] diminish and that overall, the impairment is no more than definite." Under the new criteria, the Board concluded: "Here again, the medical records provide a preponderance of the evidence showing that while there may be occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, the veteran is generally functioning satisfactorily."

## II. ANALYSIS

### A. Abandoned Claim

In his brief, the appellant states that he "formally withdraws his claim for schizophrenia. The appellant does not believe that he has schizophrenia currently, or at any time during the past." Essentially, the appellant contended that he had been misdiagnosed with schizophrenia

when he actually suffered from PTSD.  The Court, therefore, will grant the appellant's motion to withdraw his appeal and will consider this claim abandoned.  *See Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993).

B.  Increased Disability Rating

The Board's decision regarding the degree of disability under the rating schedule is a finding of fact subject to the "clearly erroneous" standard of review.  *Johnson v. Brown*, 10 Vet.App. 80, 84 (1997).  The Court may not reject the Board's conclusion if it is supported by a plausible basis in the record.  *Sanders v. Derwinski*, 1 Vet.App. 88, 90 (1990); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).  The Court is not permitted to substitute its own judgment for a factual determination made by the Board, even if it might not have reached the same conclusion.  *Gilbert*, 1 Vet.App. at 53.

At the time the appellant filed his claim for an increased disability rating, a 30% rating for schizophrenia was warranted when there was "Definite impairment in the ability to establish or maintain effective and wholesome relationships with people.  The psychoneurotic symptoms result in such reduction in initiative, flexibility, efficiency and reliability as to produce definite industrial impairment."  38 C.F.R. § 4.132, Diagnostic Code (DC) 9411 (1992).  A 50% disability rating for PTSD was warranted when, "Ability to establish or maintain effective or favorable relationships with people is considerably impaired.  By reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels are so reduced as to result in considerable industrial impairment."  *Id.*  A 70% disability rating was warranted when "Ability to establish or maintain effectve [sic] or favorable relationships with people is severely impaired.  The psychoneurotic symptoms are of such severity and persistence that there is severe impairment in the ability to obtain or retain employment."  *Id.*        Since the appellant filed his claim for an increase, the criteria for disability ratings have been changed.  Currently, a 30% disability rating is warranted when:

> Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

38 C.F.R. § 4.130, DC 9411 (1999).  A 50% disability rating is warranted when:

Occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

*Id.* A 70% disability rating is warranted when:

Occupational and social impairment, with deficiencies in most areas, such as work, school, family relationships, judgment, thinking, or mood, due to such symptoms as: suicidal ideation, obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene, difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.

*Id.*

When the law governing a claimant's disability rating changes while on appeal, as was the case here, the claimant is entitled to have his claim considered under both sets of criteria to determine which set is more favorable. *See Karnas v. Derwinski*, 1 Vet.App. 308 (1991). The claimant is then entitled to be rated under the more favorable ratings. *Id.* In this case, the Board determined that neither the old nor the new regulations were more favorable, as under both sets of regulations, the appellant was not entitled to a disability rating higher than 30%. Reviewing the matter under the old regulations, the Board noted that the appellant's PTSD symptomatology "tends to establish that the manifestations are subject to periods of acute exacerbation, which the [sic] diminish and that overall, the impairment is no more than definite." After a review of the record on appeal, the Court finds a plausible basis in the record for the Board's findings. Although the record demonstrates that the appellant's social and industrial capability has been impaired by his PTSD, the Court cannot hold that the Board's finding of "definite" rather than "considerable" impairment was clearly erroneous.

In a similar manner, the Board found that the appellant was not entitled to a higher disability rating under the new regulation . After a review of the record on appeal, the Court again cannot hold that the Board's findings were clearly erroneous. The record on appeal does

9

not reflect that the appellant suffered from any of the symptoms which would warrant a 50% or higher disability rating.

None of the medical reports contained in the record on appeal indicated that the appellant suffered from the symptoms which characterized a 50% or higher disability rating such as flattened affect, impaired memory, impaired judgment, or mood disturbances.

In his brief, the appellant argues that his symptoms indicate that he is entitled to at least a 70% schedular rating for PTSD. He argues that the Board erred by failing to consider all of the evidence of record and by forming its own medical opinion which is not based in the record on appeal. On the contrary, the Court finds that the Board's decision is clearly based on the record on appeal. The appellant has not pointed to any evidence in the record which establishes that he currently suffers from the symptomatology which characterizes a disability rating higher than 30%. Therefore, the Board's finding that the appellant is not entitled to a disability rating in excess of 30% is not clearly erroneous. In the alternative, the appellant argues that he was entitled to the "benefit of the doubt" doctrine because there is an approximate balance of positive and negative evidence in support of his claim. However, the Board found that the preponderance of the evidence did not support an increased disability rating. Therefore, the Board did not err in applying this doctrine. *See Schoolman v. West*, 12 Vet.App. 307, 311 (1999).

## C. Earlier Effective Date

Under 38 U.S.C. § 5110(a), "the effective date of an award based on an original claim . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." The Board's decision regarding the effective date of an award is also a finding of fact subject to the "clearly erroneous" standard of review. *See Johnson, supra.* As noted above, the Court may not reject the Board's conclusion if it is supported by a plausible basis in the record. *See Sanders, supra.* The Court is not permitted to substitute its own judgment for a factual determination made by the Board, even if it might not have reached the same conclusion. *See Gilbert, supra.* As always, the Board is required to provide adequate "reasons and bases" for its decision. *See* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 56-57.

In this case, the Board found that the appellant had a pending and unadjudicated claim for a nervous condition which he had filed in 1972. Thus, that claim remains pending for the

purposes of the assignment of an effective date for that disability. Nonetheless, the Board concluded that "the first competent evidence of PTSD was June 11, 1992. Since there was already a pending claim, the effective date is set in accordance with the facts found; the date that establishes the diagnosis with competent evidence." Regarding the doctor's statements presented by the appellant which opined that the appellant had been suffering from PTSD since at least 1972, the Board held:

> The creation of documents in 1994 does not serve to establish that the "facts" existed prior to 1992. These are new facts created in 1994. The veteran has presented no competent document that is dated (and received) prior to 1992 that establishes the fact that he had PTSD. The Board does not challenge the revision of the past diagnosis. However, that revision did not exist prior to 1992. Therefore, the documents do not serve to establish an earlier effective date.

However, in an original claim for benefits, the date the evidence is submitted or received is irrelevant when considering the effective date of an award. As noted above, the effective date of an award "shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a). Thus, when an original claim for benefits is pending, as the Board found here, the date on which the evidence is submitted is irrelevant even if it was submitted over twenty years after the time period in question. In this case, the Board found that the appellant had an unadjudicated claim for compensation pending since January 1972. This does not prevent the appellant from using this evidence, whatever date it may be submitted, to support his claim for an earlier effective date in his original claim for compensation.

In sum, the Court finds that this issue must be remanded to the Board for readjudication of the effective date of the appellant's PTSD claim and to assign the appropriate disability ratings if necessary. First, the Board must determine when the appellant's service-connected disability manifested itself under the all of the "facts found," including the medical opinions in question, and assign an effective date no earlier than January 1972. Of course, whether or not that evidence submitted is credible and sufficient to support a determination that an earlier effective date is warranted is a finding of fact for the Board to determine in the first instance. *See Hensley v. West*, 212 F.3d 1255 (Fed. Cir. 2000). Second, if the Board has assigned an earlier effective date of an award, the Board must assign the appropriate disability rating or ratings. Dependent on the "facts found," this rating may be a constant rating if the disability has been consistent in

11

severity or a "staged" rating if the disability has fluctuated in severity. *See Fenderson v. West*, 12 Vet.App. 119 (1999).

## III. CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the appellant has not demonstrated that the Board committed either legal or factual error which would warrant reversal or remand on the issue of an increased disability rating for his PTSD condition. The Court is satisfied that the Board fulfilled the "reasons and bases" requirements of 38 U.S.C. § 7104(d)(1) on that issue. To the extent it denied an increased disability rating, the Board's decision is AFFIRMED.

Regarding the appellant's claim for an earlier effective date for his PTSD condition, the Board's decision on that issue is VACATED and the matter is REMANDED for readjudication consistent with this opinion.

The appeal relating to the issue of a claim for schizophrenia is DISMISSED.

STEINBERG, *Judge*, concurring in part and dissenting in part: I concur in that portion of the majority opinion permitting the appellant to withdraw his appeal as to schizophrenia (part II.A.), and I concur in the decision of the Court to remand the claim for an earlier effective date for the award of Department of Veterans Affairs (VA) service connection for the veteran's post-traumatic stress disorder (PTSD) (part II.C.). I do not agree with the Court's affirmance (part II.B.) of what the Court considers to be a claim for an increased rating for PTSD. Rather, I believe that that claim is an appeal from an initial rating determination, and that the October 21, 1998, decision of the Board of Veterans' Appeals (Board or BVA) should be vacated as to that matter as well as to the claim for an earlier effective date for the veteran's PTSD. My reasoning follows.

## I. Background

I basically agree with the relation of the facts in part I. of the Court's opinion. However, I believe that the content of the August 1994 letter from Dr. Bennett should be set forth in greater detail, because that letter is of critical importance to the adjudication of this appeal. In that letter, Dr. Bennett explained that the "[p]revious diagnosis of latent schizophrenia" that had

12

been made in 1970 "was evidently provisional at the time due to circumstances and probably a narrow range of mental disorders for disability." Record (R.) at 370. He stated:

> I have been personally involved in [the veteran's] treatment since May 1975 and at no time ha[s he] demonstrated evidence of schizophrenia.
>
> [The veteran has] demonstrated overt symptoms of [PTSD] since that time. This has become more evident as the medical community has progressively become more aware of [PTSD] and its ramification.

*Ibid.*

## II. Analysis

### A. *PTSD Disability Rating as of 1992*

I believe that it is indisputable that the Board erred in this case by construing the veteran's claim as one for an increased rating rather than as one based on an original claim for service connection. In September 1993, a VA regional office (RO) first determined that the veteran suffered from service-connected PTSD and assigned a 30% rating. R. at 333-38. The veteran then, in November 1993, filed a Notice of Disagreement (NOD) as to that September 1993 VARO decision; the NOD stated: "I am herewith submitting VA Form 21-4138 [, a VA Statement in Support of Claim,] for the purpose of having my disability percentage calibrated at 70% retroactive to 8/16/78." R. at 347. After receiving the veteran's NOD, the RO in February 1994 denied both a higher rating and an earlier effective date for the award of service connection for PTSD. R. at 350. Thus, the initial RO determination as to the proper effective date and rating for the veteran's claim of service connection for PTSD has never been resolved, and the issue before the Board in the decision on appeal was not whether he was entitled to an *increased* rating but rather whether he was entitled to a higher *initial* rating.

Because the Board mistakenly adjudicated the instant appeal as an increased-rating claim, it appears that the Board considered only the most recent evidence of record and did not consider whether, based on all of the evidence of record -- especially the Global Assessment of Functioning Scores of "6, catastrophic" and "40" recorded on the August 1995 VA hospital discharge summary (R. at 493) -- the veteran might have been entitled to a higher rating, or a "staged" rating under *Fenderson v. West*, 12 Vet.App. 119, 126 (1999). *Compare Francisco v. Brown*, 7 Vet.App. 55, 58 (1994) ("[w]here entitlement to compensation has already been established

13

and an increase in the disability rating is at issue, the present level of disability is of primary importance"), *with Fenderson, supra* (holding that *Francisco* "is not applicable to the assignment of an initial rating for a disability following an initial award of service connection for that disability" and that "staged" ratings may be assigned as to an initial rating when the rated condition shows fluctuation in severity). Hence, I would vacate the BVA decision on this issue as well, so that, on remand, the Board would be required to consider all of the evidence of record in assigning an initial rating to the veteran's service-connected PTSD.

*B. Earlier Effective Date*

I agree with the majority's conclusion that the Board's concession that the veteran had filed a claim in January 1972 that was "sufficiently broad to specifically cover a claim for [service connection for] PTSD" (R. at 10) required the application of *Fenderson, supra*, in terms of whether the veteran should be afforded a staged rating effective as early as the date of the pending 1972 claim. I write separately to set forth my rationale for reaching that conclusion in the context of the applicable law and regulation, analogous caselaw, and facts of this case.

As the majority indicates, "the effective date of an award based on an original claim . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a). I note as well that, pursuant to the applicable VA regulation, 38 C.F.R. § 3.400(b)(2) (1999), the effective date for an initial rating assigned as to an original claim shall be the "date of receipt of claim, or date entitlement arose, whichever is later," unless the claim was received within one year after the claimant's separation from military service. Thus, the majority correctly recognizes that the 1972 claim (R. at 163) "remains pending for the purposes of the assignment of an effective date for the disability that is the subject of that January 1972 claim", *ante* at 10; *see Hanson v. Brown*, 9 Vet.App. 29, 31 (1996) (noting that an effective date for a claim filed in 1991 could be "anchored" in an unadjudicated claim filed in 1984).

Rather than consider the date of the January 1972 claim as the possible effective date for the award of service connection and thus as a possible effective date for any rating (staged or otherwise) assigned to that original claim, the Board concluded that the 1994 statements from three VA physicians -- Dr. Henson (R. at 368 (noting that veteran's alcohol use in 1972 "may explain" why he was "given a diagnosis at that time of schizophrenia")), Dr. Keiter (R. at 369

14

(stating that veteran has "at no time . . . demonstrated symptoms indicative of the diagnosis of schizophrenia")), and Dr. Bennett (R. at 370 ("I have been personally involved in [the veteran's] treatment since May 1975 and at no time ha[s he] demonstrated evidence of schizophrenia")) -- could "not serve to establish that the 'facts' existed prior to 1992" (R. at 12) so as to support an earlier effective date based on "facts found", 38 U.S.C. § 5110(a); *see also* 38 C.F.R. § 3.400(b)(2). In concluding that these medical statements indicating, retrospectively, that the veteran's PTSD existed in 1972 or 1975 did not comprise evidence to support a factual predicate prior to the date that those same statements were *prepared*, the Board failed to apply the specific language in section 5110(a) as well as to apply -- or even cite to -- its own regulation, 38 C.F.R. § 3.400(b)(2). Neither section 5110(a), which requires that the effective date of an initial rating assigned as to an original claim be set in accordance with either the date of the claim or "the date entitlement arose", nor the applicable regulation, which requires that the effective date be based on either the date of the claim or "facts found", even *suggests* that the effective date is limited to the date of the actual preparation of the evidence upon which the rating is assigned.

Moreover, this Court has approved the use by the Board of retrospective medical evidence in the assignment of staged ratings. For example, in *Meeks v. West*, the Board had assigned an initial rating of 100% beginning in January 1985 rather than the date of the claim (in December 1969) based in part on an August 1998 medical expert opinion providing a judgment as to the level of claimed disability "shown at any given period of time between December 1969 and January 1985". *Meeks*, 12 Vet.App. 352, 354, *en banc review denied*, 13 Vet.App. 40 (1999), *aff'd*, __ F.3d __, No. 99-7137 (Fed. Cir. June 27, 2000). The Court in *Meeks* affirmed that BVA decision as not clearly erroneous. *Meeks*, 12 Vet.App. at 355. Surely, if retrospective evidence can be considered as a basis for the *denial* of an earlier effective date, then retrospective evidence must be appropriate for consideration in terms of the *award* of an earlier effective date as well.[1]

In addition, in *Savage v. Gober* the Court approved the use of retrospective evidence for the purpose of a claimant's demonstrating continuity of symptomatology in order to establish

---

[1] Indeed, to hold that 38 U.S.C. § 5110(a) requires that retrospective evidence may be used only to deny a claim for an earlier effective date but not to grant such a claim would be contrary to the principle that any interpretative doubt as to the possible meaning of a statutory provision "is to be resolved in the veteran's favor". *Brown v. Gardner*, 513 U.S. 115, 118 (1994).

service connection under 38 C.F.R. § 3.303(b) (1999). *Savage*, 10 Vet.App. 488, 497 (1997) (noting that "limitations on dating and type of evidence have been found in only the few instances where there has been clear regulatory guidance to that effect" (citations omitted)). In the regulatory language in question in the instant case,[2] there is no guidance to suggest that "limitations on dating and type of evidence", *ibid.*, should be imposed in the present context, and, moreover, 38 U.S.C. § 7104(a) requires that Board decisions be based on "consideration of all evidence and material of record", without limitation.

It is reasonable to interpret the applicable law and regulation as permitting the assignment of an effective date prior to the date of the creation of the three VA doctors' 1994 statements (R. at 368-70) if such a result can be reached based on the "facts found" from the entire record on appeal. For example, if there are no facts showing that the veteran has ever in his life "demonstrated evidence of schizophrenia", that finding of fact might support Dr. Bennett's conclusion, based on his "personal involve[ment] in [the veteran's] treatment since May 1975", that the veteran has never been schizophrenic but rather has had PTSD "since that time". R. at 370; *see also* R. at 369 (Dr. Keiter's statement that the veteran has "at no time . . . demonstrated symptoms indicative of the diagnosis of schizophrenia"). Similarly, if the facts show that the veteran may in fact have been misdiagnosed, based on his alcohol use, as having schizophrenia in 1972, as postulated by Dr. Henson (R. at 368), then an earlier effective date may be warranted based on such facts found. Hence, the Board was required to resolve in favor of the veteran any interpretative doubt as to the possible consideration of retrospective evidence in connection with the "facts found" provision of section 5110(a). *See, e.g., Dippel v. West*, 12 Vet.App. 466, 472 (1999) (quoting "the injunction of the Supreme Court in *Brown v. Gardner* . . . : '[I]nterpretive doubt is to be resolved in the veteran's favor'". *Gardner*, 513 U.S. 115, 118 (1994)"); *see also Allen v. Brown*, 7 Vet.App. 439, 448 (en banc) (applying *Gardner* to resolve interpretative doubt in veteran's favor).

Finally, I note the Board's erroneous citation of the Court's opinion in *Williams v. Gober*, 10 Vet.App. 447 (1997), in support of its conclusion that "an effective date should not be set prior to the creation of competent evidence establishing the existence of the particular disease or injury". R. at 11. In that case, the Court affirmed as not clearly erroneous a BVA

---

[2] *I.e.*, 38 C.F.R. § 3.400(b)(2) (1999).

determination that the date of a medical record of the veteran's first admission to a hospital, which the Board found had served as an informal claim for service connection for that disability, was the appropriate effective date for a subsequent award of service connection based on that informal claim. *Williams*, 10 Vet.App. at 452. There, the Board found, as a matter of fact, that the date of the veteran's hospitalization was the first point in time at which it could ascertain, based on the medical evidence of record, that the veteran actually had the disability at issue in that case. Because the medical evidence at issue in *Williams* was not retrospective and no medical evidence suggested an earlier manifestation of that disability, *Williams* does not provide support for the legal conclusion for which it was cited by the Board.

## III. Conclusion

For the foregoing reasons, the BVA decision should be vacated both on the matter of the proper effective date for the award of service connection based on the veteran's PTSD claim as well as on the matter of the proper rating for that service-connected disability and both matters remanded for readjudication consistent with *Fenderson, supra.*