Citation Nr: 21049968
Decision Date: 08/13/21 Archive Date: 08/13/21

DOCKET NO. 13-28 724A
DATE: August 13, 2021

ORDER

An initial rating in excess of 50 percent for posttraumatic stress disorder (PTSD) is denied.

 

FINDING OF FACT

The severity, frequency, and duration of the Veteran's PTSD symptoms did not more closely approximate occupational and social impairment with deficiencies in most areas. 

CONCLUSION OF LAW

The criteria for a rating in excess of 50 percent for PTSD have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.126, 4.130, Diagnostic Code (DC) 9411.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from April 1968 to April 1972.

The case is on appeal from an October 2016 rating decision that implemented a September 2016 Board decision granting the appeal with respect to service connection for PTSD. The Veteran appealed the initial assigned noncompensable rating prior to September 23, 2013, and a 30 percent rating thereafter. Subsequently, in a January 2019 rating decision, the RO assigned a 50 percent rating from December 6, 2013. 

In May 2020, the Board assigned an initial 50 percent rating for entire period on appeal and remanded a rating in excess of 50 percent for additional development. The increased rating matter remains in appellate status as the maximum rating has not been assigned for the entire period on appeal. See AB v. Brown, 6 Vet. App. 35, 38 (1993).

The Board also remanded a claim for a total disability rating based on individual unemployability due to service-connected disability (TDIU). Upon remand, an August 2020 rating decision granted a TDIU effective from October 23, 2009. As the appeal period for the instant claim begins in February 2012, the grant of TDIU from October 2009 was a complete grant of the benefit sought in connection with the instant appeal. Harper v. Wilkie, 30 Vet. App. 356, 362 (2018). As such, the TDIU issue is no longer on appeal. 

New evidence was added to file after the most recent supplemental statement of the case (SSOC) in February 2021. This evidence was either submitted by the Veteran, for which waiver is presumed, or is duplicative of evidence previously of record. 

An initial rating in excess of 50 percent for PTSD. 

The Veteran is seeking an increased rating for his service-connected PTSD. He contends his symptoms are more severe than currently rated. The appeal period begins from a February 2012, when service connection went into effect for the disability. 

Legal Criteria

Ratings are based on a schedule of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. 38 U.S.C. § 1155. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1.

An effective date for an increased rating should not be assigned mechanically based on the date of a diagnosis. Rather, all of the facts should be examined to determine the date that the disability first manifested. Accordingly, the effective date for an increased rating-as well as for an initial rating or for staged ratings-is predicated on when the increase in the level of disability can be ascertained. Swain v. McDonald, 27 Vet. App. 219, 224 (2015); DeLisio v. Shinseki, 25 Vet. App. 45, 56 (2011). 

In determining when an increase is "factually ascertainable," all of the evidence must be looked to, including testimonial evidence and expert medical opinions, and an effective date must be assigned based on that evidence. See McGrath v. Gober, 14 Vet. App. 28, 35-36 (2000); VAOPGCPREC 12-98. Thus, "it is the information in a medical opinion, and not the date the medical opinion [that] was provided that is relevant when assigning an effective date." Tatum v. Shinseki, 24 Vet. App. 139, 145 (2010); see also Young v. McDonald, 766 F.3d 1348 (Fed. Cir. 2014).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

The Veteran's PTSD has been evaluated under the General Rating Formula for Mental Disorders (General Formula). 38 C.F.R. § 4.130, DC 9411. 

A 10 percent rating is warranted for PTSD where there is occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication.

A 30 percent rating is assigned for PTSD for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood; anxiety; suspiciousness; panic attacks (weekly or less often); chronic sleep impairment; and mild memory loss (such as forgetting names, directions, recent events).

A 50 percent rating is assigned when symptoms such as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships cause occupational and social impairment with reduced reliability and productivity.

A 70 percent rating is assigned when symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or inability to establish and maintain effective relationships cause occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood.

A 100 percent rating is assigned when symptoms such as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation or own name cause total occupational and social impairment.

Under the General Formula, the Board must conduct a "holistic analysis" that considers all associated symptoms, regardless of whether they are listed as criteria. Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017); 38 C.F.R. § 4.130. The Board must determine whether unlisted symptoms are similar in severity, frequency, and duration to the listed symptoms associated with specific disability percentages. Then, the Board must determine whether the associated symptoms, both listed and unlisted, caused the level of impairment required for a higher disability rating. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 114-118 (Fed. Cir. 2013). 

Background and Facts

The Veteran was afforded a VA examination in November 2012. The examiner determined the Veteran did not meet the full diagnostic criteria for a PTSD diagnosis because, although he experienced trauma while in Vietnam, the Veteran had only mild reexperiencing of his experiences in service and did not display avoidance or increased arousal symptoms. The examiner found that the Veteran did not have a mental disorder diagnosis at that time. Concerning the Veteran's family and social history, the examiner noted that the Veteran had good relationships with his spouse of 39 years and his four adult children. He socialized with family and friends, including eating out at restaurants and attending family gatherings. He was the pastor of a church and attended church activities. He was less physically active than he used to be due to a non-service connected back disability but enjoyed reading and watching television. Concerning the Veteran's occupational history, the examiner noted that the Veteran drove a truck for 10 years and that the Veteran retired in 2009 from Hayes International. 

With regard to a PTSD diagnosis, the examiner found the Veteran experienced a stressor that met Criterion A, persistently reexperienced the traumatic event, meeting Criterion B, but did not meet Criterion C, D, or E. With regard to a mental status examination, the examiner noted that the Veteran was alert and oriented. His mood was "pretty good" with a full range of appropriate affect. He reported feeling down at times and feeling frustrated about the VA claims process. He denied anger, anxiety, excessive worry, panic attacks, a history of suicide attempt, suicidal ideations, and audio or visual hallucinations. He slept 6 to 7 hours per night on average, although he woke up some nights. He had occasional dreams related to Vietnam, and his spouse reported that he talked in his sleep and occasionally slept walked. He thought about Vietnam periodically, and characterized it as a time in his life he would never forget. 

In December 2012, the Veteran submitted a statement in which he reported flashbacks during sleep that cause him to be awakened in terror. His spouse and children also told him that one night that he punched a wall and said, "They are trying to kill me!" while he was asleep. Before that night, he was not aware that he was having PTSD symptoms, but he had been having flashbacks and nightmares for years. 

A September 2013 VA treatment record reflects that the Veteran was referred for a mental health evaluation due to possible depression. At that time, the Veteran reported symptoms of depression, anxiety, anger, flashbacks approximately three times a week, and nightmares approximately two times per week. He was easily startled, hypervigilant, and often felt numb and detached. He slept 6 hours a night, and no longer enjoyed shooting pool or being around others. He had low energy, fair concentration, and poor appetite. He was anxious, irritable, tense, and "up tight" most days. He denied suicidal and homicidal ideations, audio and visual hallucinations, and paranoia. The Veteran's daughter was present at this appointment. She reported that he was often agitated and had frequent nightmares. He frequently checked outside his home. She indicated his symptoms had worsened over the past three years. On mental status examination, the Veteran was dressed and groomed appropriately. He exhibited fair eye contact, appropriate psychomotor activity, and fluent and spontaneous speech with normal rate, volume, and prosody. He was depressed with dysphoric affect. His thought processes were goal directed. He denied audio and visual hallucinations, delusions, suicidal and homicidal ideations, and obsessions. He was alert and oriented times three. His insight and judgement were fair.

At VA in June 2016, the Veteran reported "doing pretty good." He reported his mood had been "good," and he denied recent depression. Medication had eliminated his nightmares. He had some occasional intrusive thoughts, and loud noises triggered him to be "'snappy' sometimes." He was well-groomed with calm behavior, full range of affect, no impairment in thinking identified, and had fair judgment. He denied suicidal ideation. 

The Veteran's representative provided an evaluation by a private psychologist in June 2016. The psychologist conducted an interview with the Veteran by phone. With regard to the Veteran's occupational history, the examiner noted that the Veteran retired in 2009. Prior to his retirement, the Veteran was employed by different truck transportation companies, and worked 28 years for a sheet metal company. With regard to the quality of his work record, the Veteran admitted that he experienced conflict throughout his employment history with coworkers and bosses and that he was often angry, irritable, hypervigilant, and quick to defend what he saw as his honor. With regard to his family background, the examiner reported that the Veteran has been married since 1974. Although the Veteran denied any history of formal separations or consideration of divorce, he reported that his anger prompted many unofficial separations and angry incidents, some of which badly scared his wife and his children. The Veteran stated that he has four children, with whom he thinks he has a pretty good relationship. Concerning his social life, the Veteran reported that he prefers to be alone and avoid others. He stated that he and his wife do not go out very often due to not wanting to be around others, because he fears that he may become involved in an angry confrontation or incident. The psychologist noted that the Veteran's social interactions appear to be more limited that described in the November 2012 VA examination. For example, the Veteran is only able to socially in the church setting in which he has known the others there for 27 years. 

The psychologist also described the Veteran's psychiatric history. The psychologist commented the Veteran's history reveals a growing pattern of symptom emergence which eventually became more clearly related to PTSD and depression. As early as September 2013, clinical notes indicated he was experiencing nightmares, exaggerated startle response, flashbacks, hypervigilance, and feeling numb and detached. The psychologist also noted that major depressive disorder and chronic PTSD symptoms were diagnosed in November 2015 and February 2016 VA treatment notes. He also found significant that the Veteran's VA psychiatrist increased his medications to eliminate nightmares. The psychologist stated that if the Veteran stopped taking these medications, the nightmares would return. On mental status examination, the psychologist found that the Veteran was depressed but his affect was appropriate to content. The Veteran was oriented to person, place, time, and situation. The psychologist also commented that the Veteran admits to thoughts, images, and memories of this traumatic war experiences expressing themselves in an intrusive and increasingly frequent manner and that his short- and long-term memory are compromised by his depression and anxiety. The Veteran denied current suicidal and homicidal ideation and plans but did endorse the same as occurring about one year prior. The psychologist determined that the Veteran demonstrates significant impairments in most major areas of life functioning such as interpersonal, social, vocational, and avocational pursuits. 

The Veteran provided a lay statement describing his symptoms in January 2017. He reported experiencing a long history of being unable to handle any type of stressful situation and that when he feels stressed out, he quickly feels overwhelmed with anxiety and anger. The Veteran explained further that it takes a long time for him to calm down after he is provoked so he isolates himself in his home in order to avoid confrontation with others. He stated that he has physically struck doors, walls, and other objects during bouts of rage and that his wife told him that he is difficult to get along with and that he is a "mean person." The Veteran also stated that he had many incidents of intense outbursts of anger due to stress at work. The Veteran also described experiencing hypervigilance. He stated that when he is home alone for extended periods of time, he will keep a pistol with him until another family member comes home. He additionally described experiencing nightmares and flashbacks related to his time in service. Concerning nightmares, he stated that although he takes medication for his nightmares, his nightmares are terrifying and interfere with his sleep, which causes him to be tired throughout the day and irritable. In regard to flashbacks, the Veteran stated that loud noises and certain smells will trigger intense vivid flashbacks that leave him afraid. 

The Veteran submitted an additional lay statement in January 2018 in which he described his symptoms. He stated that he does not trust people and feels they are trying to take advantage of him. He also stated that he is always on edge and hypervigilant, and as a result always carried a knife with him. The Veteran commented that he always thinks about his time in service and experiences flashbacks as often as three times per week, which interferes with his concentration. He stated further that his PTSD impairs his ability to get restful sleep due nightmares and that he suffers from mood swings and irritability which have put a strain on his relationship with his wife and his daughter. 

The Veteran underwent an additional VA examination in December 2018. At that time, the examiner determined the Veteran had occupational and social impairment with reduced reliability and productivity. With regard to relevant social, marital, and family history since his November 2012 VA examination, the Veteran reported an improvement in his marital relationship, particularly with regard to communication. The Veteran denied frequent arguments with his spouse and that he frequently visits with his grandchildren. He also stated that he goes to the YMCA for exercise once or twice per week. With regard to his mental health, the Veteran reported that he is easily agitated towards others, and that he feels detachment from his spouse and grandchildren, but denied any suicide or homicide attempts or ideations. With regard to symptoms, the examiner reported that the Veteran experienced a depressed mood, anxiety, suspiciousness, mild memory loss, circumstantial, circumlocutory, or stereotyped speech, and disturbances of motivation or mood. With regard to behavioral observations, the examiner commented that the Veteran was in a wheelchair, he was appropriately dressed and adequately groomed, his speech was circumstantial with mispronounced words. He was cooperative and engaged. He was oriented times four but with poor recall. Gross memory was intact. Good eye contact was exhibited. He reported stable mood with congruent affect. He denied suicidal and homicidal ideations. There were no signs of panic, mania, or psychotic symptoms. His insight and judgment were good. 

In March 2020, the Veteran underwent a neuropsychological evaluation. The Veteran was referred for progressively worsening cognitive functioning characterized by poor memory and disorientation while driving. The Veteran and his wife reported the symptoms started insidiously in the last 12 to 15 months. Neuropsychological testing revealed mild to moderate diffuse deficits affecting cognitive functions in the front-subcortical brain circuits and posterior cerebral cortex of the right hemisphere. The Veteran's current deficits reflected a decline from his baseline level of functioning. Alzheimer's disease could not be ruled out. The Veteran was diagnosed with mild cognitive impairment (MCI) and mild neurocognitive disorder. The clinician found this diagnosis was the most appropriate because the Veteran remained largely independent in his activities of daily living. However, the MCI was considered advanced, and the clinician believed he was on the cusp of the early stages of mild dementia. Exacerbating factors included chronic pain, irregular sleep, and chronic PTSD. The diagnostic impression was MCI due to multiple etiologies and chronic PTSD.

Pursuant to the Board's May 2020 remand, the Veteran underwent an additional VA examination in February 2021. At that time, the examiner determined the Veteran had occupational and social impairment due to mild or transient symptoms which decreased work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by medication. With regard to his recent social, marital, and family history, the Veteran reported that he has a "pretty good relationship" with his spouse of 50 years. With regard to his mental health history, the Veteran reported that he experienced ongoing mild symptoms and that the severity of his symptoms was reduced on his mental health medications. His primary concerns with regard to symptoms were that he continued to have some irritability, nightmares a few times per month, a few recurrent involuntary distressing memories, avoidance of memories, hypervigilance, and startled responses. The Veteran also denied any suicidal or homicidal ideations. With regard to symptoms, the examiner found that the Veteran experienced a depressed mood, suspiciousness, chronic sleep impairment, and disturbances of motivation or mood. The examiner remarked that the Veteran's current symptoms were mild with medication. She noted that the Veteran's memory impairment at this time was unlikely due to his PTSD, as his PTSD symptoms had been well managed, and improved. 

The evidence of record also includes VA treatment records from the appellate period. VA treatment records reflect that the Veteran participated in individual therapy with medication management throughout the appellate period. These records generally reflect that the Veteran symptomology with regard to mood, sleep impairment, and flashbacks improved with medication. Specific details of these records will be discussed in more detail as they pertain to the analysis below.

Analysis

In consideration of the evidence, the Board finds the criteria for an initial rating in excess of 50 percent have not been met. In this regard, VA examinations, VA treatment records, and the Veteran's lay statements reflect that the Veteran's PTSD was manifested by symptoms associated with the 30 percent rating, namely, depressed mood, anxiety, suspiciousness, mild memory loss, and chronic sleep impairment. With regard to symptoms listed at the 50 percent rating criteria, the Veteran is noted to have disturbances of motivation or mood. 

The Veteran also has symptoms of irritability, isolation, intrusive memories, exaggerated startle response, anger, hypervigilance, and low stress tolerance. The Board finds the severity, frequency, and duration of the Veteran's these symptoms more closely approximate the symptoms contemplated by a 50 percent rating, which are less severe, less frequent, and shorter in duration than those contemplated by a 70 percent rating. See 38 C.F.R. § 4.126. 

First, irritability without violence is not a severe as impaired impulse control. There is no evidence that the Veteran's impulse control was impaired. The June 2016 private evaluation referred to some past episodes of "fights and near fights" at his workplace, but this was well before the current appeal period. 

Second, concerning social isolation, the evidence of record reflects that the Veteran maintained a long-term marriage, a relationship with his children, grandchildren, and those who attended a church he pastored. This symptom may represent difficulty in establishing and maintaining effective work and social relationships, but is inconsistent with inability to establish and maintain effective relationships. 

Finally, the remaining symptoms, particularly anger and low stress tolerance, are similar to a disturbance in motivation or mood. The February 2021 VA examiner explained that the Veteran's memory problems, for which he had aid and attendance, was not due to the PTSD disability, and therefore cannot be compensated under the PTSD rating. Mittleider v. West, 11 Vet. App. 181 (1998)

The Board notes that the private psychological evaluation submitted by the Veteran in June 2016 reflects that he expressed suicidal ideation a year prior. This symptom is listed the 70 percent level. See Bankhead v. Shulkin, 29 Vet. App. 10, 19 (2017). The Board does not wish to diminish this symptom. However, the duration, frequency, and severity of this apparently isolated event does not rise to the level of causing an impairment in most areas. The psychologist who provided the June 2016 private evaluation determined that the Veteran demonstrated significant impairments in most major areas of life functioning such as interpersonal, social, vocational, and avocational pursuits, which is equivalent to the 70 percent rating. However, this level of impairment is inconsistent with the other evidence of record, including those contemporaneous with the private evaluation. In particular, the Veteran's VA treatment records note that he regularly reported that he was doing well and that his symptomology with regard to mood, sleep impairment, and flashbacks improved with medication. The private provider's findings are entirely and consistently different from those reflected at the VA examinations and during VA treatment, which do not reflect that the Veteran's level of impairment was consistent with a 70 percent rating. As such, this private provider's evaluation appears to be an invalid picture of the symptomatology, and the Board has afforded it correspondingly less probative weight. See McCray v. Wilkie, 31 Vet. App. 243, 257 (2019); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). 

In sum, the preponderance of the evidence weighs against the claim for an initial rating in excess of 50 percent for PTSD. There is no reasonable doubt to be resolved, and an increased rating is not warranted. The appeal is denied. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

 

 

 

Corey Bosely

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board E. Gray, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.