﻿Citation Nr: AXXXXXXXX
Decision Date: 11/08/18 Archive Date: 11/07/18

DOCKET NO. 180820-143
DATE: November 8, 2018
ORDER
Entitlement to an effective date earlier than October 22, 2009, for the award of service connection for posttraumatic stress disorder (PTSD) is denied.
Entitlement to an initial rating in excess of 70 percent for service-connected PTSD from October 22, 2009 to May 24, 2018, is denied.
Entitlement to a total disability rating based on individual unemployability (TDIU) is granted, effective October 22, 2009.
FINDINGS OF FACT
1. The Veteran’s initial claim for service connection for PTSD was received on October 22, 2009, and this date represents the earliest possible effective date for the award of service connection for PTSD.
2. The preponderance of the evidence fails to demonstrate that the Veteran’s service-connected PTSD was manifested by total occupational and social impairment from October 22, 2009 to May 24, 2018.
3. Resolving all reasonable doubt in the Veteran’s favor, she has been unable to secure or follow a substantially gainful occupation as a result of her service-connected PTSD.
CONCLUSIONS OF LAW
1. The criteria for an effective date earlier than October 22, 2009, for the award of service connection for PTSD are not met. 38 U.S.C. § 5110(a) (2012); 38 C.F.R. §§ 3.1(p), (r), 3.151(a), 3.159, 3.400(b)(2) (2017).
2. The criteria for an initial rating in excess of 70 percent for service-connected PTSD from October 22, 2009 to May 24, 2018, are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411 (2017).
3. The criteria for a TDIU are met, effective October 22, 2009. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.16 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. 
The Veteran served in the Air National Guard from May 1978 to February 1980. On May 24, 2018, the Veteran selected the Higher-Level Review lane when she submitted her RAMP election form. Accordingly, the August 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed the August 2018 RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).
1. Entitlement to an effective date earlier than October 22, 2009, for the award of service connection for PTSD
In general, except as otherwise provided, the effective date of an evaluation based on an original claim will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. 
Effective March 24, 2015, VA amended its adjudication regulations to require that all claims governed by VA’s adjudication regulations be filed on standard forms prescribed by the Secretary. See 79 Fed. Reg. 57,660 (Sept. 25, 2014). This rulemaking also eliminated the constructive receipt of VA reports of hospitalization or examination and other medical records as informal claims for increase, and revised 38 C.F.R. § 3.400(o)(2). These amendments are applicable with respect to claims and appeals filed on or after March 24, 2015, and, therefore, are not applicable in the present case. Id. at 57,686.
Under the former regulations applicable in this case, any communication indicating intent to apply for a benefit under the laws administered by the VA may be considered an informal claim provided it identifies, but not necessarily with specificity, the benefit sought. See 38 C.F.R. § 3.155(a). To determine when a claim was received, the Board must review all communications in the claims file that may be construed as an application or claim. See Quarles v. Derwinski, 3 Vet. App. 129, 134 (1992).
Upon receipt of an informal claim, if a formal claim has not been filed, the AOJ will forward an application form to the claimant for execution. If the AOJ receives a complete application from the claimant within one year from the date it was sent, the AOJ will consider it filed as of the date of receipt of the informal claim. 38 C.F.R. § 3.155.
The United States Court of Appeals for Veterans Claims (Court) has explained that, in an original claim for service connection, the date entitlement arose is governed by the date the claim is received, not the date of the medical evidence submitted to support a claim. See McGrath v. Gober, 14 Vet. App. 28 (2000). 
By way of background, the Veteran submitted an informal claim for service connection for PTSD that was received on October 22, 2009. In a February 2018 rating decision, the AOJ granted service connection for PTSD, effective October 22, 2009, the date her informal claim was received.
In her May 2018 notice of disagreement, the Veteran asserted that an earlier effective date was warranted; however, no argument supporting that contention was offered.
In reviewing the claims file, the Board observes no communication received by VA prior to her October 22, 2009 claim that can be interpreted as an informal service-connection claim for PTSD, and the Veteran does not identify any prior communication she believes should be interpreted as a claim. As such, October 22, 2009, is the earliest effective date allowable under the applicable criteria discussed above. 38 C.F.R. §§ 3.400(b)(2). 
The law and regulations governing effective dates preclude the assignment of an effective date earlier than the date she filed her service-connection claim, October 22, 2009. As such, her claim for an earlier effective date must be denied.
2. Entitlement to an initial rating in excess of 70 percent for service-connected PTSD from October 22, 2009 to May 24, 2018.
Effective October 22, 2009, the Veteran was assigned an initial rating of 70 percent for PTSD under 38 C.F.R. § 4.130, Diagnostic Code 9411. She contends that she is entitled to a higher initial disability rating for PTSD.
Disability evaluations are determined by evaluating the extent to which a veteran’s service-connected disability adversely affects her ability to function under the ordinary conditions of daily life, including employment, by comparing her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10.
Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. Reasonable doubt will be resolved in the veteran’s favor. 38 C.F.R. § 4.3. 
A veteran’s entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). However, where the question for consideration is entitlement to a higher initial rating assigned following the grant of service connection, evaluation of the medical evidence since the effective date of the grant of service connection and consideration of the appropriateness of “staged rating” (assignment of different ratings for distinct periods of time, based on the facts found) is required. Fenderson v. West, 12 Vet. App. 119, 126 (1999).
The General Rating Formula for Mental Disorders at 38 C.F.R. § 4.130 provides the following ratings for psychiatric disabilities:
A 70 percent rating is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. 38 C.F.R. § 4.130.
A 100 percent rating is warranted for total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.
When determining the appropriate disability evaluation under the general rating formula, the primary consideration of the Board of Veterans’ Appeals (Board) is a veteran’s symptoms, but it must also make findings as to how those symptoms impact the veteran’s occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013). A veteran may only qualify for a given disability rating under the general rating formula by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Id. at 117-18. The symptoms listed are not exhaustive, but rather “serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating.” Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In the context of determining whether a higher disability evaluation is warranted, the analysis requires considering “not only the presence of certain symptoms[,] but also that those symptoms have caused occupational and social impairment in most of the referenced areas.” Vazquez-Claudio, 713 F.3d at 117; 38 C.F.R. § 4.130.
The Board has thoroughly reviewed all the evidence in the Veteran’s claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted. See Gonzalez v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The discussion and analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the veteran).
September, October, and November 2009 private treatment records note that the Veteran was oriented with appropriate mood and affect. She was cooperative and well groomed, and was not anxious, depressed, or in acute stress.
In support of her claim, the Veteran submitted a December 2009 initial behavioral health assessment completed by A.L. The Veteran reported depression and ongoing emotional difficulties due to an in-service sexual assault. After discussing her in-service stressor, she stated that she never experienced joy and that she experienced sleep disturbances. The Veteran was reportedly working as a personal care assistant for home health client, and most of her work experience was in caregiving and housekeeping. She lived alone. Upon examination, she was pleasant and casually groomed. She was fully communicative and attentive, although she cried throughout the session and seemed to be in severe emotional pain. Her mood was depressed. There was no signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic processes. Her associations were intact, her thinking was logical, and her thought content was appropriate. She denied suicidal and homicidal ideations. Her cognitive functioning and fund of knowledge was intact, as was her short- and long-term memory and social judgment. A.L. noted that she worked regularly, but that she took part in very few social activities.
In December 2009, the Veteran reported that she had been battling depression for thirty years. She reported that she cried easily, and that she experienced depression and suicidal ideation. Upon examination, she was alert and oriented. Later that same month, she denied suicidal ideation.
Subsequent private treatment records dated in February 2010, April 2010, and August 2010 once again note that she was alert and oriented.
A January 2010 private treatment record noted that the Veteran was crying and was very depressed. She was overwhelmed by emotion, and she viewed the world as a hostile place and stayed to herself. She only trusted her family and had difficulty in other relationships.
An April 2010 private treatment record noted that anxiety continued to be an ongoing issue.
In September 2010, the Veteran reported that she was not currently working because the people she cared for were in rehabilitation and the hospital.
An October 2011 private treatment record indicated that the Veteran had recently lost her job. A November 2011 private treatment record noted that she was still looking for work.
A May 2012 private treatment record noted that the Veteran was not experiencing anxiety, changes in sleep patterns, or mood changes. She was alert, oriented, and there were no signs of acute distress.
A January 2013 private treatment record noted the Veteran’s in-service and post-service history. She reported problems with nightmares, flashbacks, anxiety, worry, restlessness, an exaggerated startle response, and difficulty trusting anyone. She also reported problems with extreme depression, sadness, crying, irritability, disinterest in extracurricular activities, poor appetite, poor sleep, poor energy, guilt, poor concentration, hopelessness, and suicidal ideation, intent, and plan. She denied manic symptoms, but her depressive symptoms were always with her. She also reported problems with nervousness, fatigue, her mind going blank, muscle tension, and sleep disturbances. She also reported problems with anger, occasionally hearing things, and paranoia. Upon examination, neat, alert, and cooperative. She maintained fair eye contact, and her language and speech was normal. Her affect was sad, tearful, anxious, and suspicious. She was goal directed, but her thought content was positive for paranoia, ideas of reference, and off and on hallucinations. Although she reported suicidal ideation, she denied any prior attempts, and she denied homicidal ideation. She was oriented to the date, but not the day of the week. Her judgment and insight were poor.
A February 2013 private treatment record noted the Veteran’s history of depressed mood most of the day; crying spells; fatigue and loss of energy; trouble concentrating and forgetfulness; irritability; sleeping problems; feelings of hopelessness; easily distracted; feelings of worthlessness; decreased interest; and social withdrawal. She was not found to pose a risk of harm to herself or others.
In April 2013, the Veteran underwent a psychological evaluation in connection with her claim for Social Security Administration (SSA) disability benefits. Her hygiene and grooming were good, and she was cooperative. Her speech was understandable, and the examiner felt that she was credible. The Veteran reported a depressed mood, crying spells, social isolation, and poor sleep. She reported thoughts of suicide, but denied any intent or plan. She stated that her depressive symptoms were influenced by her past traumatic events, including her in-service stressor and being attacked at work. She stated that she experienced distressing memories about her in-service assault, as well as sometimes hearing a baby crying. She reported that her daily activities included watching television, cooking, and some household chores. Occasionally, she would go for a walk, and attended church. She stated that she was uncomfortable going outside, and that she would cry unexpectedly. She last worked in February 2012 as a part-time in-home caregiver, but she stopped working after she was physically attacked by her patient.
Upon examination, she was fidgety and keyed up. She appeared anxious, but was able to complete the intake forms. Her behavior was within normal limits, and her speech was understandable. Her mood was anxious and depressed, and she became teary frequently during the evaluation. She denied suicidal or homicidal ideation or intent, as well as psychotic symptoms. Her thoughts were scattered, and she would provide inconsistent information. She was fully oriented to person, place, time, personal information, and current events. She was alert and aware of her surroundings, and her memory appeared intact, although she did have some recall difficulty at times due to her anxiety. Her judgment and insight were thought to be impaired, and her intelligence was deemed to fall in the low average range. After summarizing the Veteran’s pertinent history, the examiner concluded that her symptoms appeared to have a moderate impact on her psychosocial functioning. She was deemed to be able to understand, retain, and follow simple instructions, and her attention and memory functioning appeared generally consistent with other intellectual abilities, although she demonstrated problems with attention and memory secondary to her anxiety symptoms. Her motivation was moderately impaired, as was her ability to relate to coworkers and supervisors. She was not expected to exhibit behavior problems, but her ability to tolerate stress was moderately to severely impaired. Finally, the examiner noted that her ability to tolerate the stress and pressures associated with day-to-day work activity was moderately impaired.
An October 2014 private treatment record noted that the Veteran was seen for depression, and that she was recently hospitalized for suicidal thoughts and depression. Her depressed symptoms included depressed mood, hopelessness, low energy, poor sleep, and irritability. She also experienced visual hallucinations.
A January 2015 private treatment record noted that the Veteran’s symptoms included flashbacks, intrusive thoughts, avoidance behaviors, disinterest in life, relationship problems, hopelessness, irritability, agitation, sleep disturbances, and nightmares.
A March 2015 private treatment record noted that the Veteran was alert and oriented. The treatment provider noted the presence of social isolation as a result of being impatient and feeling anxious around others; anxiety; changes in her sleep patterns; depression; feeling easily irritated; fearful; frequent crying; hallucinations; nervousness; and trouble falling asleep. She denied homicidal and suicidal ideations, delusions, and panic attacks. Upon examination, she was alert, oriented, and cooperative. She was not anxious or depressed, and her associations were intact. Her insight was appropriate, but she lacked the judgment regarding everyday activities and her judgment was inappropriate in social settings. Hallucinations were also reported. Her fund of knowledge was appropriate, and she was able to recall past history and demonstrated an appropriate vocabulary. There was no impairment of word comprehension, abstract reasoning, concentration, or short-term memory.
In November 2017, the Veteran underwent a private evaluation. The examiner noted that he had reviewed her entire claims file, and noted that her mental health difficulties included the following symptoms: depression, sadness, crying, irritability, disinterest, poor appetite, poor sleep, poor energy, guilt, poor concentration, hopelessness, suicidal ideation, anxiety, worry, nervousness, restlessness, fatigue, irritability, difficulty concentrating, mind going blank, muscle tension, sleep disturbance with increased heart rate, sweating, shaking, chest pain, and abdominal distress. He concluded that the functional limitations posed by her psychiatric diagnoses were very severe and rendered her unemployable, even in occupations which would be considered low-stress, and those that required performing non-exertional activities, such as effectively communicating, remembering and following instructions, using judgment, adapting to changes, and dealing with people, including supervisors, coworkers, and the public.
The examiner noted that, during the examination, the Veteran initially had an angry expression and was reluctant to talk, although she opened up as the interview progressed. After reviewing pertinent evidence of record and discussing the DSM-5 diagnostic criteria for both PTSD and major depressive disorder, the examiner then stated that the Veteran’s symptoms clearly showed deficiencies in most areas, such as work, school, family relations, judgment, and thinking due to across-the- board PTSD symptoms, nearly constant anxiety and depression with frequent suicidal ideation (this alone would make the Veteran unemployable). He continued that these symptoms rendered her unable to function independently, appropriately and effectively. She was found to neglect her personal appearance and hygiene. Moreover, the examiner determined that it was impossible for her to adapt to stressful circumstances. Because of all these things, she is unemployable and has been since her last sustained employment in 2007.
In February 2018, the Veteran underwent a VA examination, and was diagnosed with PTSD. Overall, the examiner concluded that the Veteran’s symptoms resulted in occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, and/or mood. Pertinent to the PTSD diagnostic criteria, the examiner noted that the Veteran’s symptoms included the following: recurrent, involuntary, and intrusive distressing memories; recurrent distressing dreams; intense or prolonged psychological distress at exposure to internal or external cues; and marked physiological reactions to internal or external cues. She also experienced avoidance of or efforts to avoid distressing memories or feelings associated her in-service stressor; and she avoided external reminders of her in-service stressors that arouse distressing memories, thoughts, or feelings. She experienced an inability to remember important aspects of her in-service stressor; persistent, distorted cognitions about the cause of consequences of her in-service stressor; a persistent negative emotional state; markedly diminished interest or participation in significant activities; feelings of detachment or estrangement; and a persistent inability to experience positive emotions. Also present was irritable behavior and angry outbursts; reckless or self-destructive behavior; hypervigilance; exaggerate startle response; problems with concentration; and sleep disturbances. These symptoms were noted to cause clinically significant distress or impairment in social, occupation, or other important areas of functioning. Other symptoms included depressed mood; anxiety; suspiciousness; panic attacks that occurred weekly or less often; chronic sleep impairment; disturbances in motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a work-like setting; an inability to establish and maintain effective relationships; impaired impulse control such as unprovoked irritability with periods of violence; and neglect of personal appearance and hygiene. The examiner noted that the Veteran did not appear to pose a threat of danger or injury to herself or others, but that she needed to seek follow-up treatment.
Upon consideration of the entire record, the Veteran’s PTSD has generally been manifested by: depressed mood, anxiety, sleep disturbances, nightmares, suicidal ideation, crying spells, an exaggerated startle response, irritability, disinterest in activities, social isolation, problems concentrating, feelings of hopelessness, hallucinations, difficulty in establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances, including work or a worklike setting. Collectively, the Board finds that these symptoms are of the type, extent, severity, and frequency that most closely approximates occupational and social impairment with deficiencies in most areas. 38 C.F.R. § 4.126. Under the General Rating Formula for Mental Disorders, the Veteran is entitled to an initial rating of 70 percent for her PTSD. 38 C.F.R. § 4.130.
The lay and medical evidence of record, however, does not demonstrate that the Veteran’s PTSD manifests in symptoms so severe as to cause total occupational and social impairment. Despite deficiencies in most areas of occupational and social impairment, the Veteran has generally been shown to have logical and organized thought processes. Throughout the appeal period she has generally been alert, cooperative, and oriented to person, place, time, and situation. Despite her social avoidance behaviors, she maintained familial relationships. The evidence of record indicates the Veteran was generally able to perform activities of daily living. She has not exhibited gross impairment in thought processes or communication, grossly inappropriate behavior, persistent danger of hurting herself or others, intermittent inability to perform activities of daily living, disorientation to time or place, or memory loss for names of close relatives or self. Although the Veteran at times experiences hallucinations, such are not shown to be so severe as to cause the Veteran social impairment to a degree where she cannot maintain relationships with her family.
The Board acknowledges that the symptoms contained in the General Rating Formula for Mental Disorders are not exhaustive, but serve as examples of the type and degree of symptoms or effects that would justify a particular rating. Mauerhan, 16 Vet. App. at 442. Additionally, the Board has not required the presence of a specified quantity of symptoms to warrant a higher rating for a mental disorder. However, the Board finds that the type and degree of symptoms associated with the Veteran’s service-connected PTDS have not resulted in total occupational and social impairment justifying a rating of 100 percent. Overall, the Veteran has demonstrated symptoms consistent with the 70 percent rating.
Furthermore, both the November 2017 private opinion and the February 2018 VA examination report indicate that the Veteran has occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, and mood, which is in line with the criteria for a 70 percent rating. 
The preponderance of evidence is against a finding that the Veteran has total occupational and social impairment. Accordingly, an initial disability rating in excess of 70 percent for PTSD is denied.
3. Entitlement to a TDIU from October 22, 2009 to May 24, 2018.
A claim for TDIU is considered part and parcel of an increased rating claim, when such a claim is raised by the appellant or the record. See Rice v. Shinseki, App. 447 (2009). Thus, while the Veteran filed a formal claim for a TDIU in June 2017, her claim for a TDIU is part and parcel of her claim for a higher initial rating for her service-connected PTSD.
In order to establish entitlement to TDIU due to service-connected disabilities, there must be impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. See 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16. In reaching such a determination, the central inquiry is “whether the veteran’s service connected disabilities alone are of sufficient severity to produce unemployability.” Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the veteran’s level of education, special training, and previous work experience in arriving at a conclusion, but not to her age or to the impairment caused by non-service-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19 (2006); Van Hoose v. Brown, 4 Vet. App. 361 (1993).
Total disability ratings for compensation may be assigned, in circumstances where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more with sufficient additional disability to bring the combined rating to 70 percent or more. See 38 C.F.R. § 4.16(a).
The term “unemployability,” as used in VA regulations governing total disability ratings, is synonymous with an inability to secure and follow a substantially gainful occupation. See VAOPGCPREC 75-91 (Dec. 17, 1991). The issue is whether the Veteran’s service-connected disabilities preclude her from engaging in substantially gainful employment (i.e., work which is more than marginal, that permits the individual to earn a “living wage”). See Moore v. Derwinski, 1 Vet. App. 356 (1991). In Faust v. West, 13 Vet. App. 342 (2000), the Court defined “substantially gainful employment” as an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that a veteran actually works and without regard to a veteran’s earned annual income. In Hatlestad v. Derwinski, 5 Vet. App. 524, 529 (1993), the Court held that the central inquiry in determining whether a veteran is entitled to TDIU is whether his or her service-connected disabilities alone are of sufficient severity to produce unemployability. In a claim for TDIU, the Board may not reject the claim without producing evidence, as distinguished from mere conjecture, that the veteran’s service-connected disability or disabilities do not prevent her from performing work that would produce sufficient income to be other than marginal. Friscia v. Brown, 7 Vet. App. 294 (1995), citing Beaty v. Brown, 6 Vet. App. 532, 537 (1994).
The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether the veteran is capable of performing the physical and mental acts required by employment, not whether she can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993).
When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).
Initially, the Board notes that, effective October 22, 2009, the Veteran was service-connected for PTSD, rated as 70 percent disabling. Thus, from October 22, 2009, the Veteran met the schedular criteria for a TDIU under 38 C.F.R. § 4.16(a). The remaining inquiry, therefore, is whether the Veteran was unable to secure or follow substantially gainful employment due solely to her service-connected PTSD during that period.
Based on the medical evidence of record, the Board finds that the Veteran was unable to engage in substantially gainful employment as a result of her service-connected PTSD, effective October 22, 2009. 
Initially, the Board notes that the evidence of record suggests that the Veteran was employed as a caregiver at some points during the appeal period. In her June 2017 VA Form 21-8940, Veteran’s Application for Increased Compensation Based on Unemployability, she indicated that, from May to June 2010, she worked twenty hours a week, earning $9.00; and from June to December 2011, she worked thirty hours a week, earning $9.00 an hour. A September 2015 SSA decision noted that, for year 2011, the Veteran earned $4,326.51, and for the year 2012, she earned $743.75. 
As noted above, marginal employment is not considered substantially gainful employment and generally is deemed to exist when a veteran’s earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census (Census Bureau), as the poverty threshold for one person. Faust v. West, 13 Vet. App. 342 (2000). According to the Census Bureau, the Poverty Threshold in 2010 was $11,344 for one individual under the age of 65; in 2011, the poverty threshold was $11,702; and in 2012, the poverty threshold was $11,945. Poverty Thresholds, U.S. Census Bureau, https://www.census.gov/data/tables/time-series/demo/income-poverty/historical-poverty-thresholds.html.
Based on the evidence of record, including the Veteran’s self-reported earnings and the earnings reported in the September 2015 SSA decision, the Board finds that the Veteran’s employment during the appeal period was not substantially gainful, as her earnings did not exceed the poverty threshold as defined by the Census Bureau.
Furthermore, as to whether her inability to engage in substantially gainful is a result of her service-connected PTSD, as noted above, the April 2013 SSA psychological evaluation concluded that the Veteran experienced a moderate impairment of psychosocial functioning, and that her ability to relate to coworkers and supervisors moderately impaired. She was not expected to exhibit behavior problems, but her ability to tolerate stress was moderately to severely impaired, and her ability to tolerate the stress and pressures associated with day-to-day work activity was moderately impaired. Similarly, the November 2017 private examiner concluded that the functional limitations posed by the Veteran’s service-connected PTSD were very severe and rendered her unemployable, and that this functional limitation had been present since 2007. Finally, the February 2018 VA examiner concluded that the Veteran experienced clinically significant distress or impairment in social, occupational, or other impairment areas of function, and that the Veteran would have difficulty in in establishing and maintaining effective work and social relationships, as well as difficulty in adapting to stressful circumstances, including work or a work-like setting.
Based on the medical evidence of record, the Board finds that the Veteran’s service-connected PTSD prevents her from securing or following substantially gainful employment. The claim for a TDIU is granted, effective October 22, 2009. 

 
V. Chiappetta
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD James R. Springer, Associate Counsel